**20**

Douglas L. Elliman & Co., Inc., Respondent, *v.* Sterling Garage, Inc., Appellant.

First Department, October 16, 1951.

*Philip Robbins* of counsel (*Adolph S. Ziegler* with him on the brief; *Robbins & Robbins,* attorneys), for appellant.

*Clarence S. Barasch* of counsel (*Alexander Pfeiffer* with him on the brief; *Pfeiffer & Crames,* attorneys), for respondent.

VAN VOORHIS, J. We think that defendant was entitled to summary judgment dismissing the complaint in this action for brokerage commissions, claimed to have been earned through procuring a prospective long-term lessee of real estate. Defendant-appellant is the owner of the real property. Plaintiff was hired by it as broker to obtain a satisfactory lessee prepared to enter into a lease that would be satisfactory to the owner. No price nor terms were given to the broker in advance. A commission could only be earned, under the initial arrangement with the broker, in event that the owner were to agree to accept a prospective tenant procured by the broker, and to lease the property for the length of time and at the rent which the prospective tenant offered. Nothing in the agreement of hiring of plaintiff prevented the owner from using any offer obtained as a leverage by which to obtain a better offer from another customer through another broker. That is what actually happened. The owner did obtain a lease at a higher rental through the instrumentality of another broker who was paid a full commission.

The basis on which plaintiff seeks to recover a commission is the contention that defendant-appellant agreed to accept a specific offer obtained by plaintiff from a man named Marcus before leasing to the other person. Plaintiff's brief states that '' On December 20, 1949, Marcus' offer, which was then set forth in a letter, was accepted at the office of Metropolitan Life Insurance Company, 1 Madison Avenue, New York City '' in the presence of various officers of defendant and of defendant's attorney, and that consequently a commission became due and payable to plaintiff. No lease or other agreement is claimed to have been signed by defendant with Marcus. Plaintiff's con‑ tention is refuted conclusively by the fact that at the commencement of the conference on December 20, 1949, defendant insisted upon plaintiff's signing a letter, which it did sign, dated upon that day, which is Exhibit A attached to defendant's moving affidavit, and which contains the following language: '' You have requested that we furnish you with this letter in order that there may be no misunderstanding with respect to broker‑ age fees. If you consummate a lease with our client upon terms mutually agreed upon, a brokerage commission shall be deemed earned by us. If for any reason, including your fault, no lease is consummated with our client, no commission shall be deemed earned or be due and payable. Further, we understand you reserve the right to reject any offer for the leasing of the garage

and you reserve the right, if the offer is tentatively accepted, not to close the lease if any of the details of the lease are not mutually agreed upon between our client and yourself and therefore to repeat, no commission shall be deemed earned by us or be due and payable unless and until a lease is actually closed.''

No evidentiary facts have been adduced showing any fraud in the making of that agreement, nor is the gravamen of the action fraud or bad faith (*Douglas L. Elliman & Co. v. Sterling Garage, Inc.,* 277 App. Div. 969).

The intention and object of this letter was clearly to enable defendant to negotiate with others without liability to pay a brokerage commission to plaintiff, unless a lease were actually to be signed with plaintiff's client Marcus. Even if, as plaintiff's affidavits state, defendant's representatives said upon this occasion that Mr. Marcus' offer would be acceptable, no liability to pay a commission to plaintiff could come into existence in view of this letter unless a lease with Marcus were actually signed.

Faced with these facts, and notwithstanding the statement in the brief for plaintiff that Marcus' offer was accepted on December 20th, plaintiff's vice-president has made affidavit that on December 16, 1949 — four days earlier — he was told by one of defendant's officers that defendant '' wanted at least $25,000.00 a year net ''. This contention appears to have been an afterthought that Marcus' offer was accepted on December 16th, four days before the letter was written. No triable issue is presented, however, since even if this statement were made, it would not be enough to commit defendant in advance to the acceptance of any particular offer at a specified rental for a particular number of years, such as the offer made by Marcus at the meeting on December 20th.

The order appealed from should be reversed, with $20 costs and disbursements to the appellant, and defendant's motion for summary judgment dismissing the complaint granted, with costs to the defendant.

SHIENTAG, J. (dissenting). Implicit in the so-called '' exculpatory provision from liability '' is the undertaking that the defendant, the sellers, would not act arbitrarily, capriciously, fraudulently or in bad faith. The court wherever possible will endeavor to avoid a construction which would result in placing one party to a contract at the mercy of another. Notwithstanding the letter of December 20, 1949, and the circumstances

surrounding it, enough is set forth in the opposing affidavits to raise triable issues of fact and of good faith. The order denying defendant's motion for summary judgment dismissing the complaint should be affirmed, with $20 costs and disbursements to appellant.

PECK, P. J., and DORE, J., concur with VAN VOORHIS, J.; SHIENTAG, J., dissents in opinion, in which COHN, J., concurs.

Order reversed, with $20 costs and disbursements to appellant and defendant's motion for summary judgment dismissing the complaint granted, with costs to the defendant. Settle order on notice.