INDOVISION ENTERPRIZES, INC., Appellant, *v.* CARDINAL EXPORT CORPORATION, Respondent.

First Department, April 9, 1974.

*Jeremiah S. Gutman* of counsel (*Donald L. Doernberg* with him on the brief; *Levy, Gutman, Goldberg & Kaplan,* attorneys), for appellant.

*Mortimer G. Levine* for respondent.

STEUER, J. The operative facts are not in dispute, though the conclusions to be drawn from them are. Under the familiar rule, if under any viable interpretation an issue is presented, summary judgment will not lie.

On September 25, 1973, plaintiff sent a letter to defendant. The letter is inartistically phrased and the issue is as to its meaning as an expression of the will of the parties. It is necessary to set out the pertinent parts of this letter in order to appreciate the question. It starts out: "Confirming our personal discussion today, we can offer you, subject to prior sales, 40,000 bicycles at the delivery rate of 3,000 bicycles per month as follows." There follows a set of specifications for the bicycles, delivery dates, price and method of payment. The latter was to be by letter of credit in favor of the manufacturer, whose identity was not disclosed in the letter. There were exact provisions for the terms of the letter of credit. The letter then

provides that the defendant will give a guarantee to plaintiff to pay plaintiff an additional $2 for each bicycle. It next provides that the defendant will use its best efforts to have its bank make a loan to defendant of $25,000, secured by the payments of the $2 commissions. In the event that defendant buys more bicycles than the 40,000 stipulated from the same manufacturer, a commission in an amount to be agreed upon later is to be paid. The letter then obligates the seller to deliver three sample bicycles and provides for the delivery of a specified amount of spare parts and for the method of packing the shipments.

There follows this language:

"10. *Void*: This offer will be deemed null and void if the letters of credit, as required in this letter, are not opened. It is further clarified that the letter concerning the commission of Indovision Enterprises, Inc. must be written along with the letter of credit in favour of the manufacturer."

A provision follows that this offer will not affect a prior transaction pending between the parties. The letter concludes with this language: "Your signature at the foot hereof will constitute this a binding agreement between us. On our part upon your acceptance of the terms mentioned in this letter, we will authorize you to open a letter of credit as required herein in favour of the manufacturer in India. In order to enable you to do so we will convey the name and address of the manufacturer and his bankers under intimation to the manufacturer."

In compliance with the above, the defendant affixed its signature under the statement "Understood and Agreed".

The name of the manufacturer was disclosed and defendant did open a letter of credit. The letter of credit, however, did not conform to the terms specified in the writing of September 25. Plaintiff objected and defendant refused to open any further letter of credit.

That the parties entered into a mutually binding agreement would appear indisputable. Whether this agreement is one by which the plaintiff undertook to have a manufacturer, thereafter to be named, deliver bicycles according to the terms of the offer in return for a commission, as plaintiff contends, or whether defendant merely agreed to pay a commission in the event bicycles were delivered, as defendant contends, is not of paramount importance at this stage of this proceeding. Under either interpretation of the agreement there was a breach by failure to open a letter of credit. The difference between the parties as to the purport of the agreement might well affect the measure of damages and the proof in regard thereto, but it cannot serve to nullify the contract itself.

Special Term found that the quoted paragraph 10, providing that the contract would be null and void if the letter of credit was not opened, prevented recovery. If this is the correct interpretation of the expressed intent of the parties, it would mean that the buyer could by its own act nullify the agreement it had entered into. A businessman entering into a contract is not to be supposed to be entering into a futile or meaningless agreement. A provision that allows either party by his own breach to excuse his own performance is a commercial absurdity. Every part of a written agreement should be interpreted to give effect to its general purpose (4 Williston, Contracts [3d ed.], § 619). And even though literal construction might sustain an opposite interpretation, if it defeats and contravenes the purpose of the agreement it is not to be so construed (*Empire Props. Corp.* v. *Manufacturers Trust Co.*, 288 N. Y. 242, 248). The provision in question when read in the context of the entire agreement is ambiguous. It would appear that its intention was that if the letter of credit was not opened further performance by the plaintiff or the manufacturer in carrying out the performance promised by the plaintiff would be excused and the defendant would at that point be in default. The least that could be said is that the proper interpretation is one on which reasonable minds would differ, and accordingly summary judgment should not issue.

Judgment, Supreme Court, New York County (TYLER, J.), entered December 6, 1973, should be reversed on the law and vacated, and motion for summary judgment denied, with costs.

McGIVERN, P. J. (dissenting). I would affirm. I do not find any support for the view of the majority that the letter agreement is sufficiently ambiguous to deny defendant summary judgment. We do not deal, as the majority opinion suggests, with a case involving frustration of performance. The written agreement is clear: that in the event of a failure to establish a letter of credit, the agreement between the parties was to be null and void. There is a specific negation of any obligation in the event there is a failure to establish the letter of credit, without which the bicycles were not to be delivered.

No bicycles were delivered. Had the delivery of any bicycles been accepted, we might be confronted with a situation giving a color of support to the " absurdity " argument advanced in the opinion of the majority. Recovery in such an instance would be predicated, not upon the agreement, but upon *quantum meruit,* based on unjust enrichment, supported by an instrument in

writing sufficient to satisfy the Statute of Frauds. And, further, I find nothing absurd in the specifically spelled out willingness of the defendant, seeking to acquire bicycles, to pay a " finder's fee " to plaintiff, if the plaintiff was able to get bicycles through defendant's letter of credit. But I do perceive " absurdity " in asking the defendant to respond in damages for bicycles which he never obtained.

Furthermore, the letter at issue having been drafted by the plaintiff, under familiar rules of construction, any ambiguity, assuming such to exist, which is not here the fact, must be resolved against the plaintiff, the author of the instrument.

The sole purpose of the agreement was obviously to give recognition to plaintiff's entitlement to a commission of $2 per bicycle, for any bicycles actually delivered, as a result of plaintiff's efforts, in the event defendant established the required letter of credit, enabling the latter to acquire such from an undivulged manufacturer, whose name was to be disclosed by plaintiff.

The plaintiff did not offer to bind itself to have delivered any specific number of bicycles. Its offer, formulated in the guise of an illusory contract of sale, was " subject to prior sales." The defendant did not bind itself to purchase any specific number of bicycles. If this not be so, the provision of the agreement for the submission of samples of the bicycles, and the further provision calling for nullification of the agreement, in the event of failure to open the specified letter or letters, would be meaningless. Absent any such commitment, even in the absence of the clause specifically making the plaintiff's " offer null and void ", if the letters of credit were not opened, any claim for undelivered bicycles would be so tenuous as to be the proper subject of a motion for summary dismissal. (*Elliman & Co.* v. *Sterling Garage,* 279 App. Div. 20, affd. 304 N. Y. 846.)

In any event, the " contract " is clear and unambiguous, and no extraneous circumstances may be considered to whittle away the clearly declared intent of the parties, so prominently expressed in the writing drafted by plaintiff. (*West, Weir & Bartel* v. *Carter Paint Co.,* 25 N Y 2d 535.) Where language used in a contract is clear and unambiguous, there is no opportunity for interpretation or construction. (4 Williston, Contracts [3d ed., 1961], § 609.)

Special Term was correct in concluding that there was no factual basis to support plaintiff's claim, in view of the conceded fact that the required letter of credit was not obtained, thus nullifying the viability of the agreement, and upon the

further fact that plaintiff was not entitled to a commission, until " after delivery " of the goods to defendant in New York.

MARKEWICH and CAPOZZOLI, JJ., concur with STEUER, J.; McGIVERN, P. J., dissents in an opinion.

Order and judgment, Supreme Court, New York County, entered on November 16, 1973, and December 6, 1973, reversed, on the law, the judgment vacated, and defendant's motion for summary judgment denied. Appellant shall recover of respondent $60 costs and disbursements of this appeal.