**SCHULMAN INVESTMENT COMPANY, Plaintiff,**

v.

**OLIN CORPORATION, Defendant and Third Party Plaintiff,**

v.

**HABER & HENRY, INC., Tremco, Inc., Brisk Waterproofing Company, Inc., Thomas J. Mannino and Fraioli, Blum & Yesselman, Third Party Defendants.**

**HABER & HENRY, INC., Fourth Party Plaintiff,**

v.

**SUPERINTENDENT OF INSURANCE OF the STATE OF NEW YORK as Rehabilitator of Empire Mutual Insurance Company and United States Fire Insurance Company, Fourth Party Defendant.**

**No. 78 Civ. 176 (CHT).**

United States District Court, S. D. New York.

Sept. 26, 1979.

---

Greenspan & Jaffe, White Plains, N. Y., for Schulman Investment Company; Leon J. Greenspan, White Plains, N. Y., of counsel.

Willkie, Farr & Gallagher, New York City, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Olin Corporation; Howard C. Buschman III, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This diversity action arises out of the construction of two office buildings owned by the plaintiff, Schulman Investment Company ("Schulman"). Schulman alleges that the glass curtain walls installed in the buildings by defendant Olin Corporation ("Olin") did not conform to the contract between the parties and were negligently

designed and installed. Schulman charges Olin with breach of contract, breach of warranty, and negligence. In the motion before the Court, Olin moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules"). Olin contends that Schulman's claims are time-barred and that no cause of action for an implied warranty of fitness exists on the facts of this case. For the reasons discussed below, Olin's motion is denied.

## Background

In October 1971, Schulman and Olin entered into a written contract for the construction of glass curtain walls at the premises now known as "Nos. 5 and 6 Corporate Park Drive, White Plains, New York." Building No. 5 was completed in June 1973, and Building No. 6 was completed in June 1972.[1] Olin performed some corrective and remedial work on both buildings in April 1973. Schulman alleges that between September 1973 and May 1974 it advised Olin of uncorrected defects. The repair and reconstruction work done by Olin was not completed until the summer of 1974. Olin received final payment on the contract in September 1974. In the spring of 1977, Schulman became aware that some of the glass in the curtain walls had shifted and cracked and had to be replaced. Schulman then hired an "expert curtain wall design consultant" who inspected the buildings and reported on the damage. According to Schulman, the defective installation of the curtain walls created latent defects in the buildings that could not be detected or cause actual damage until some time later when the glass was subjected to continuous cycles of temperature change during the year. Schulman therefore contends that the glass did not shift, and the buildings were not damaged, until the spring of 1975.

Schulman informed Olin of this damage in August 1977 and demanded that Olin perform the necessary repairs. Olin refused on the grounds that it could not be held responsible for any defects in the building about which it had not been previously notified. Schulman then arranged to have the defective curtain walls repaired and has allegedly incurred ever-increasing expenses exceeding $400,000. In January 1978 Schulman commenced this action against Olin to recover damages for breach of contract, breach of express warranty, breach of an implied warranty of fitness, and negligence. Olin has joined five third-party defendants: Haber & Henry, Inc., the glazing subcontractor; Tremco, Inc., the manufacturer of the glazing materials; Brisk Waterproofing; Thomas J. Mannino, the architect; and Fraioli, Blum & Yesselman, the structural engineers. Each of the third-party defendants has counterclaimed against Olin and cross-claimed against the others. Haber & Henry, Inc. has added its insurance carrier as a fourth-party defendant. Olin now moves for summary judgment on the grounds that (1) Schulman's contract and warranty claims are time-barred under the terms of the written agreement between the parties; (2) Schulman has no cause of action for breach of an implied warranty of fitness; and (3) Schulman's negligence claim is barred by the applicable New York statute of limitations because the cause of action accrued more than three years before the action was commenced.[2]

## Discussion

Rule 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must resolve any doubts in favor of the party opposing the summary judgment motion. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). In deciding whether to grant the motion, a district court "cannot

---

1. Olin contends that the buildings were completed in July 1973 and July 1972, respectively. This disagreement is not relevant to the issues discussed here.

2. The parties and the Court agree that this action is governed by New York law.

try issues of fact; it can only determine whether there are issues to be tried." *Id., citing American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967). If summary judgment is denied, Rule 56(d) directs the court to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."

 The three claims made in defendant Olin's summary judgment motion will be discussed in turn. The disputed questions of fact surrounding particular issues cannot be resolved at this stage of the proceedings and make summary judgment inappropriate with respect to some claims. But because several "material factual issues are not in dispute, and furnish an adequate basis for the application of the proper legal principles," this Court may address some of the questions of law raised by Olin's motion. 6 *Moore's Federal Practice* ¶ 56.15[1.–0], at 56–398 (2d ed. 1976). In a contract action, such as the case at hand, where a defense is predicated upon an unambiguous and integrated written agreement, no genuine issue of fact might exist after applying the parol evidence rule. *Id.* at ¶ 56.17[11], at 56–778 to 79. Similarly, a statute of limitations defense may turn on a question of law, not on a question of fact. *Id.* at ¶ 56.17[58], at 56–1058. In keeping with the "policy favoring efficient resolution of disputes, which is the cornerstone of the summary judgment procedure," *SEC v. Research Automation Corp., supra* at 33, this Court will rule on those legal questions arising from the undisputed facts of the case.

*Breach of Contract*

Schulman's breach of contract claim alleges that the glass curtain walls erected by Olin failed to conform to the contract between the parties and were improperly designed and installed. Olin contends that the two contract provisions on which Schulman's suit is based contain terms limiting the time period in which Olin could be held responsible, and Schulman could sue, for damages resulting from allegedly defective work and services. Because the precise meaning of these provisions is critical to this dispute, they are quoted in full:

III. All materials are to be new and of the best quality of the kind specified and of the most approved type unless material of inferior type is distinctly specified; and all work is to be done in a workmanlike manner. It is further mutually agreed by the parties hereto that all labor employed under this contract shall be that recognized by the Building Trades Employers' Association. The General Contractor is given the right to require the Subcontractor to immediately remove any foreman or workman employed at the building whom the General Contractor deems incompetent or a hindrance to the proper progress of the work. The Subcontractor upon receiving notice from the General Contractor of the substitution of inferior, improper or unsound work or materials (whether worked or unworked), or work or materials at variance with what is specified, will, within twenty-four hours, proceed to remove such work or materials and make good all other work or materials, damaged thereby. If the General Contractor permits said work or materials to remain, the General Contractor shall be allowed the difference in value or shall at his election have the right to have said work or materials repaired or replaced as well as the damage caused thereby at the expense of the Subcontractor at any time within one year after the completion of the building; and neither payments made to the Subcontractor, nor any other acts of the General Contractor shall be construed as evidence of acceptance, waiver or estoppel.

IV. The Subcontractor agrees if any portion of said materials or workmanship furnished by him shall not in every way be good, sound, efficient and well suited for the purposes for which it is intended, and such deficiency shall occur, or be detected by inspection or otherwise within 1 year from the date of the full completion of the building appurtenances, improvements and equipments, the Subcon-

tractor shall, at any time and from time to time, upon written notice from the Architect or the General Contractor specifying a fault or imperfection in workmanship or material, promptly correct the same, and in the event of the failure of the Subcontractor to so correct the same, the General Contractor or Owner may remedy the same at the Subcontractor's expense and deduct the cost from any amount then due and thereafter to become due to the Subcontractor, and if such amount shall be insufficient, or if there shall be nothing due the Subcontractor, he shall pay the General Contractor such cost or the balance thereof.

Affidavit of Plaintiff in Opposition to Defendant's Motion for Summary Judgment, Exhibit 2 (Schulman-Olin Contract).

Olin contends that Article III provides Schulman with an option to repair defective materials or workmanship at Olin's expense, including incidental damages; that option, however, must be exercised within one year after the building is completed. Olin also contends that Article IV made it liable only for defects that occurred or were detected within one year of the building's completion. According to Olin, these provisions are "clearly analogous" to statutes of limitations because they limit the time in which Olin could be held responsible for defective work or materials. Olin argues that these provisions are consistent with N.Y.C.P.L.R. § 201 (McKinney 1972) and New York case law that permits parties to enter into agreements limiting the time in which contract rights can be enforced to a period shorter than that otherwise provided by the applicable statute of limitations. According to Olin, the depositions of Schulman's employees and Schulman's interrogatory answers conclusively establish that Schulman was unaware of the alleged defects in the curtain walls until 1977 and did not notify Olin or demand repairs before that year. Olin denies that any repair work it performed in April 1973, or any communication between the parties during 1973–1974, was related to the present curtain wall problem. Olin therefore contends that Schulman is now barred from recovering damages because it did not exercise its option or assert its rights under the contract within one year after the buildings were completed.

Not surprisingly, Schulman proposes a different interpretation of Articles III and IV. Schulman asserts that these "warranty" provisions were included in the contract to provide additional rights and remedies against Olin in specific situations; no language in the agreement limits Schulman's time to bring an action for damages. Schulman points to several other provisions in the contract that allegedly establish that Olin "warrant[ed] its performance in writing above and beyond the normal warranty implicit in the U.C.C." and intended to be held to a very high standard of care. Schulman further contends that it notified Olin about defects in the curtain walls in March 1973 and continued to advise Olin of the need for repairs during 1973–1974 after Olin unsuccessfully attempted to correct these defects in April 1973.

■ Construction of a contract is a question of law to be decided by the Court when the terms of the agreement are unambiguous and its meaning is unaffected by extrinsic facts. *National Utility Service, Inc. v. Whirlpool Corp.*, 325 F.2d 779, 781 (2d Cir. 1963); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 540, 307 N.Y.S.2d 449, 452, 255 N.E.2d 709, 711 (1969). The Court finds that neither Article III nor Article IV is "clearly analogous" to a statute of limitations. Although New York permits parties to agree contractually to a shorter limitations period, such agreements are strictly construed, and the intent to shorten the usual period must be clear. *Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744, 753 (S.D.N.Y. 1966); *Stanley R. Benjamin, Inc. v. Fidelity & Cas. Co.*, 72 Misc.2d 742, 743, 340 N.Y. S.2d 578, 580 (Sup.Ct.1972). Furthermore, neither provision limits the period of time during which Olin could be liable for defects in its original work or materials of which Schulman was unaware. Article III covers a situation where the General Contractor, Schulman, becomes aware that the

Subcontractor, Olin, is not meeting contract specifications with respect to materials and services. Under this provision, Schulman could require that such nonconforming work be removed within twenty-four hours or could permit it to remain. "If the General Contractor permits said work or materials to remain, the General Contractor shall be allowed the difference in value or shall at his election have the right to have said work or materials repaired or replaced as well as the damage caused thereby at the expense of the Subcontractor at any time within one year after the completion of the building." Article III, Schulman-Olin Contract, *supra.* The option, or duty, to demand repairs within one year of the building's completion arose only if Schulman permitted defective work or materials to remain in the buildings. *Cf. Leith Constr. Co., Inc. v. Board of Educ.,* 62 A.D.2d 1050, 404 N.Y.S.2d 151 (2d Dep't 1978) (contractual limitations period did not apply absent the occurrence of condition precedent triggering the shorter period). Neither the plaintiff's nor the defendant's version of the facts supports the conclusion that Schulman decided to retain such nonconforming work. If Schulman was totally unaware of the present curtain wall problem until 1977, as Olin contends, then Schulman cannot be said to have permitted the allegedly defective work to remain; permission implies knowledge, particularly in the context of this contract provision. If Schulman notified Olin about the deficiencies in the curtain walls during 1973–1974, as Schulman contends, then Schulman did exercise its option to demand repairs. *Cf. Hurlbut v. Christiano,* 63 A.D.2d 1116, 405 N.Y.S.2d 871 (4th Dep't 1978) (breach of warranty claim held timely where notice of breach given within time period set by parties' agreement).[3]

Article IV gives the General Contractor the right to demand repair of any deficiency in materials or workmanship that occurs or is detected within one year of the build-

ing's completion. Viewing the facts in the light most favorable to Schulman, the party opposing this summary judgment motion, the curtain wall defects both occurred and were detected within that time. Even accepting Olin's contention that it was not notified about the present curtain wall problem until 1977, the initial structural deficiency creating the damage probably existed before the buildings were completed. Furthermore, Article IV is labeled "Guarantee" and should not be read as the exclusive contract remedy. *See Town of Tonawanda v. Stapell, Mumm & Beals,* 265 N.Y. 630, 193 N.E. 419 (1934) (plaintiff not barred from seeking damages for latent construction defects by contract provision guaranteeing condition of pavement for one year); *Carrols Equities Corp. v. Villnave,* 57 A.D.2d 1044, 395 N.Y.S.2d 800 (4th Dep't 1977) (one year guarantee provision applied to contractor's duty to correct defects through supplemental performance and did not preclude action for damages).

■ Each part of a written agreement should be interpreted to effectuate its overall purpose, and due consideration should be given to the purpose of the parties in making the contract. *Cromwell Towers Redevelopment Co. v. City of Yonkers,* 41 N.Y.2d 1, 6, 390 N.Y.S.2d 822, 826, 359 N.E.2d 333, 336 (1976); *Indovision Enterprizes, Inc. v. Cardinal Export Corp.,* 44 A.D.2d 228, 230, 354 N.Y.S.2d 113, 115 (1st Dep't), *aff'd,* 36 N.Y.2d 811, 370 N.Y.S.2d 897, 331 N.E.2d 679 (1974). The affidavits and documents submitted by the parties, and the handwritten changes on the printed agreement, demonstrate that this contract was carefully negotiated. The contract between the parties is replete with provisions other than Articles III and IV that delineate Schulman's rights and Olin's responsibilities under the agreement. None of these provisions establish a limitations period for actions arising under the contract.

---

**3.** The Second Circuit recently declared that "[i]ssues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case . . . .

When conflicting inferences can be drawn from the facts, however, summary judgment is inappropriate." *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir. 1979).

Accordingly, on the basis of the Court's construction of Articles III and IV and its reading of the contract taken as a whole, the Court concludes that Schulman's claim for breach of contract is not time-barred by the terms of the agreement.

*Breach of Warranty*

Schulman's claim for breach of warranty alleges that Olin warranted, orally and in writing, that the materials and workmanship provided would be "good, sound, efficient, and well suited for the purposes for which they were intended." Plaintiff's Second Amended Complaint at 6. Schulman also asserts that it relied upon Olin's "skill and judgment, reputation and expertise in the furnishing of material and workmanship for the erection of curtain walls." *Id.* The contract between the parties included an express warranty provision and other parts of the agreement included statements guaranteeing the quality of specific materials and services provided by Olin.

Olin contends that Schulman's express warranty claims based on the contract between the parties are time-barred by the terms of the agreement. This contention is part of Olin's argument, described above, that the time limitations established by the agreement bar Schulman's action for breach of contract. For the reasons discussed in the preceding section, the Court rejects Olin's time-bar claim.

Olin also contends that Schulman has no cause of action under New York law for an implied warranty of fitness. (Although Schulman's complaint did not explicitly allege an implied warranty of fitness, Schulman's memorandum in opposition to Olin's summary judgment motion does assert that such a claim can be stated under New York law.) *Milau Assoc., Inc. v. North Ave. Dev. Corp.,* 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247 (1977), is the leading case on this issue. In *Milau,* the New York Court of Appeals reaffirmed its

view that " 'when service predominates, and transfer of personal property is but an incidental feature of the transaction,' the exacting warranty standards for imposing liability without proof of fault will not be imported from the law of sales." *Id.* at 486, 398 N.Y.S.2d at 884, 368 N.E.2d at 1249, *quoting Perlmutter v. Beth David Hosp.,* 308 N.Y. 100, 104, 123 N.E.2d 792, 794 (1954). The court rejected the plaintiff's claim for breach of an implied warranty of fitness because the contract between the parties concerned "a predominantly labor-intensive endeavor, . . . the workmanlike performance of a construction service." This ruling appears to be applicable to the case at bar. *See Gordon v. Holt,* 65 A.D.2d 344, 349, 412 N.Y.S.2d 534, 537 (4th Dep't 1979) ("New York does not recognize a cause of action based upon breach of an implied warranty where, as here, only economic loss is claimed and where the warranty arises from a contract for services.") The Court should not, however, reach the issue prematurely, and summary judgment would be inappropriate for two reasons. First, in order to apply the *Milau* "sales-service dichotomy," the Court must determine whether the contract between Schulman and Olin was primarily labor or material intensive. Because factors such as cost allocation, subcontracts, and purchasing agreements may bear upon this determination, it raises a question of fact that should not be resolved on a motion for summary judgment.[4] Second, Schulman's complaint seeks damages of $400,000, or such other sum as may be ascertained at trial, "on any or more of the causes of action" alleged in the complaint. If Schulman prevails on a different cause of action, it will be unnecessary to reach the implied warranty of fitness issue. *Cf. Bulova Watch Co., Inc. v. Celotex Corp.,* 46 N.Y.2d 606, 610, 415 N.Y.S.2d 817, 819, 389 N.E.2d 130, 131 (1979) ("Even assuming that a warranty of fitness would arise under the original combined sale and services contract (but see *Milau Assoc. v. North Ave. Dev. Corp.,* 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247), the

---

**4.** For example, Schulman states that out of a contract price of $440,000, at least $293,000

was spent on material as opposed to labor or services.

claim would be barred by the Statute of Limitations.") The Court therefore concludes that it should not prematurely or unnecessarily decide this uncertain issue of New York law.

*Negligence*

Schulman's third claim alleges that Olin negligently designed, erected, and repaired the glass curtain walls. Schulman contends that this negligence cause of action accrued in 1977 "when the injury [was] experienced." Olin argues that the cause of action accrued either when Buildings Nos. 5 and 6 were completed (June 1973 and June 1972, respectively) or when Olin was paid in full in September 1974. Schulman commenced this action in January 1978. Olin therefore contends that the negligence claim is barred by New York's three-year statute of limitations for "an action to recover damages for an injury to property." N.Y.C.P.L.R. § 214(4) (McKinney 1972).

■ The Court agrees with Olin that Schulman's negligence cause of action accrued on or before September 1974. The Court does not, however, agree that this claim is time-barred. Schulman may proceed on a negligence theory, subject to the qualifications discussed below.

A long line of New York cases has established that a cause of action for negligence accrues at the time the negligent act is committed, not when the injury is discovered. *See, e. g., Sears, Roebuck & Co. v. Enco Assocs., Inc.*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977); *Schwartz v. Heyden Newport Chemical Corp.*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *amended*, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, *cert. denied*, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963); *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936). The cases cited by Schulman that recognize exceptions to this rule are inapposite to the case at bar. Schulman's suit does not involve the delayed discovery of a surgically implanted foreign object, *Flanagan v. Mount Eden Gen. Hosp.*, 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969), or a

continuous injury such as trespass, *509 Sixth Ave. Corp. v. New York City Transit Auth.*, 15 N.Y.2d 48, 255 N.Y.S.2d 89, 203 N.E.2d 486 (1964), or continuing medical treatment, *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). These exceptions have been narrowly construed by New York courts. *See, e. g., Gilbert Properties, Inc. v. Millstein*, 40 A.D.2d 100, 338 N.Y.S.2d 370 (1st Dep't 1972), *aff'd*, 33 N.Y.2d 857, 352 N.Y. S.2d 198, 307 N.E.2d 257 (1973) (the *Flanagan* delayed-discovery rule inapplicable to untimely malpractice action commenced when plaintiff became aware of defendant's wrongful acts); *Steinberg v. Rosenblum*, 205 Misc. 760, 130 N.Y.S.2d 129 (Sup.Ct.), *aff'd*, 284 A.D. 871, 134 N.Y.S.2d 591 (1st Dep't 1954) (building damage resulting from negligent construction work did not constitute continuing injury). As stated by the New York Court of Appeals, "knowledge of the invasion of a right has not been considered critical in determining the time when a cause of action accrue[d]." *509 Sixth Ave. Corp., supra*, 255 N.Y.S.2d at 91, 203 N.E.2d at 487. This principle was recently applied by a New York court in *Macrose Realty Corp. v. City of New York*, 49 A.D.2d 847, 373 N.Y.S.2d 611 (1st Dep't 1975), a case concerning the allegedly negligent construction of a building. The landowner's claim was held time-barred by the court because it did "not involve an encroachment or a continuous nuisance. Damage, if any, was inflicted in 1939 when defendants allegedly undermined the foundations of the buildings in issue; and a cause of action then accrued notwithstanding the fact that consequential damages flowed later." *Id.* at 847, 373 N.Y.S.2d at 612. The reasoning of the *Macrose* court is equally applicable to the case at bar; Schulman's claim accrued when the alleged injury was sustained, not when it was subsequently discovered.

Although Schulman's cause of action accrued more than three years before the commencement of this suit, the New York Court of Appeals' decision in *Sears, Roebuck & Co. v. Enco Assocs., Inc.*, 43 N.Y.2d

389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977), enables plaintiff to attempt to prove that Olin negligently performed its contractual duties. In *Sears*, a property owner entered into a contract with an architectural firm for the design, supervision, and construction of ramps for a parking deck. The project was completed in the spring of 1968. About two years later, the ramps began to crack as a result of alleged defects in the original design. The owner sued the architects to recover damages for negligence, breach of contract, and breach of an implied warranty.[5] The court held that the plaintiff's claims accrued upon completion of construction in 1968. Noting that the selection of the proper statute of limitations is directly related to the remedy sought, rather than to the theory of liability, the court stated that "claims by owners against architects arising out of the performance or nonperformance of obligations under contracts between them are governed by the six-year Statute of Limitations (CPLR 213, subd. 2), except with respect to the issue of damages as described below." *Id.* at 395, 401 N.Y. S.2d at 770, 372 N.E.2d at 558.

The *Sears* decision governs the case now before the Court. Like the architects in *Sears*:

> All obligations of the [defendant] here, whether verbalized as in tort for professional malpractice or as in contract for nonperformance of particular provisions of the contract, arose out of the contractual relationship of the parties—i. e., absent the contract between them, no services would have been performed and thus there would have been no claims. It should make no difference then how the asserted liability is classified or described, or whether it is said that, although not expressed, an agreement to exercise due care in the performance of the agreed services is to be implied; it suffices that all liability alleged in this complaint has its genesis in the contractual relationship of the parties.

*Id.* at 396, 401 N.Y.S.2d at 770–71, 372 N.E.2d at 558 (citations omitted).

Accordingly, the *Sears* court's ruling on permissible proof and damages is equally applicable to the instant case. As stated by the New York Court of Appeals:

> [T]he range of proof to be adduced to establish liability will be correspondingly broad. That is to say, not only will evidence be admissible, as in the normal contracts case, which might tend to establish breach of a particular term of the contract between the parties; it will also be open to plaintiff owner to introduce evidence, including expert testimony, which might demonstrate that the architects failed to use due and reasonable care in the performance of their obligations under the contract or that their performance fell short of the applicable professional standards—in effect the same scope of admissibility as in the instance of what has in the past been referred to as a claim for professional malpractice.

> Inasmuch as the selection of the applicable Statute of Limitations is related to the remedy sought, we turn to consideration of the relief requested by Sears, Roebuck. In the first cause of action . . plaintiff owner seeks to recover damages of two sorts—first, for cost of correction incident to the removal of the allegedly defective ramps and their replacement by properly constructed ramps . . . and second, for loss of anticipated profits in consequence of business interruption while the defective ramps are being replaced . . . . In principle, because this action was not commenced within three years after accrual of the owner's claims, proof on the issue of damages should be limited to that admissible under the law of damages for contract liability. Had the action been commenced within the three-year period applicable to tort claims, the owner would have been free to elect to sue in contract or in tort as it

---

5. The court held that no action lies for a breach of an implied warranty of fitness against an architect.

saw fit and to offer appropriate proof of damages.

*Id.*, 401 N.Y.S.2d at 771, 372 N.E.2d at 558–559 (citations omitted).

Under the rule announced in *Sears*, Schulman's negligence claim should not be dismissed on a motion for summary judgment. Schulman can try to prove that Olin breached its contractual duty of care by submitting evidence of Olin's alleged negligence in performing the contract. Because this action was commenced more than three years after the claim accrued, tort damages cannot be recovered. Schulman's complaint, however, did not specifically demand any kind of damages allowable in tort but not in contract. Furthermore, as stated by the *Sears* court, "[i]t would be inappropriate, . . . on a motion addressed to the pleadings for us to attempt to delineate the precise line of demarcation in the law of damages based on contract liability and those based on tort liability." *Id.* at 397, 401 N.Y.S.2d at 771, 372 N.E.2d at 559.

The recent case of *Steiner v. Wenning*, 43 N.Y.2d 831, 402 N.Y.S.2d 567, 373 N.E.2d 366 (1977), provides further support for denying defendant's summary judgment motion on this claim. In *Steiner*, a homeowner sued an architect alleging that the latter had negligently performed work done pursuant to a contract between the parties. The complaint, which was described as "sounding in tort and in contract," was dismissed as untimely by the trial court, and the appellate division affirmed. The New York Court of Appeals, *citing Sears*, reversed the decision. The court held that the three-year statute of limitations should not have been applied to dismiss the complaint because it "stated a good cause of action in contract and sought no greater recovery than would be allowed under the law of damages with respect to contract liability." *Id.* at 832, 402 N.Y.S.2d at 568, 373 N.E.2d at 367. The same result should be reached in the case at bar.

### Conclusion

Schulman's claims for breach of contract, breach of an express warranty, and negli-gent performance of contractual duties are not time-barred. The Court reserves decision on the question of whether Schulman can state a claim for breach of an implied warranty of fitness. At trial, Schulman's proof on the issue of damages will be limited to evidence admissible under the law of damages for contract liability.

Defendant Olin's motion for summary judgment is denied.

So ordered.