■ CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, v NARROWS CROSSING, INC., et al., Appellants, et al., Defendant.—Judgment of the Supreme Court, New York County (Charles A. Kuffner, J.), entered February 22, 1985 after a nonjury trial, which dismissed defendant's fifth counterclaim with prejudice, affirmed, with costs.

In 1960 the parties executed a lease agreement. By the agreement's terms, Con Edison was to lease a pipeline from Narrows Crossing at an annual rental of $125,000. Among defendant lessor's obligations was payment of taxes assessed on the pipeline. If defendant defaulted on its tax payments, plaintiff was entitled in certain circumstances under section 12 of the agreement to discharge any resulting lien and to "deduct any amount paid or expense so incurred from any amounts otherwise payable by Lessee to Lessor". Section 14 of the agreement provided that upon default or breach by the lessor of any of its contractual obligations, plaintiff lessee was to have the option of purchasing the pipeline after giving 60 days' notice of the default. Were the lessee to exercise this option, it would be obligated to satisfy or assume the outstanding pipeline mortgage and, having done so, its responsibilities under the lease would be terminated "without making any further or additional payment to Lessor".

Another part of the lease agreement, section 15, gave plain-

tiff lessee the option to purchase the pipeline at any time after the agreement had been in place for five years. In the event that a section 15 purchase occurred after 10 years of the lease term, lessee was to have the option of acquiring the pipeline free and clear of the mortgage loan but would have to pay a stipulated option price.

By June 1977 taxes on the pipeline in the amount of $457,325.28 were owed New York City by defendant, and the pipeline was the subject of an in rem tax foreclosure proceeding. Noting that defendant had defaulted on its contractual obligation to pay taxes assessed on the pipeline and to keep the pipeline free of liens and encumbrances, plaintiff advised defendant by letter dated June 15, 1977 that it was purchasing the pipeline pursuant to section 14 of the lease agreement. When defendant after 60 days elected not to cure its default, plaintiff paid the outstanding taxes on the pipeline and assumed the more than $1 million obligation on the mortgage loan, as was required by the section 14 purchase option in the lease agreement. Thereafter, plaintiff commenced this action to recover taxes paid on defendant's account. In its answer, defendant asserted a counterclaim for the option purchase price. It is the propriety of the trial court's dismissal of this counterclaim which forms the focus of this appeal.

Defendant maintains that when the lease agreement is read as a whole it indicates that plaintiff lessee may not, under the present circumstances, purchase the pipeline pursuant to section 14 of the lease without paying the stipulated option purchase price. It is urged that, having elected to recover taxes paid on defendant's account, plaintiff is bound by section 12 of the lease agreement to effectuate its recovery by setting off the tax obligation against "any amounts otherwise payable". "[A]mounts otherwise payable", defendant contends refers to the purchase option price. Failure to adopt this construction of the lease, defendant argues, renders section 12 of the agreement meaningless and allows plaintiff a windfall.

Defendant's arguments notwithstanding, there is no reason to suppose that section 12 limits plaintiff lessee's rights and remedies in the event of defendant lessor's default. Under certain circumstances (which incidentally do not obtain here) the lessee may pay the lessor's tax obligation and deduct those payments from amounts payable to the lessor pursuant to section 12. But this is merely an option, it is not the lessee's only remedy when the lessor defaults. The lessee may also resort to section 14's provisions, expressly applicable to lessor's default in the performance of *"any* covenant, term or

condition" in the lease (emphasis added). No exception is made for default in tax payments, which circumstance is plainly among those addressed by section 14. Moreover, section 14's remedies are explicitly "in addition to, and not in lieu of, any other rights and remedies Lessee may possess upon the happening of such default or breach."

Yet even if it is assumed, arguendo, that plaintiff's remedy is limited by section 12, and taxes paid on defendant's behalf are to be deducted from any amounts otherwise payable, it does not follow that any amounts are in fact payable. It is undisputed that plaintiff has exercised its option to purchase pursuant to section 14. That paragraph provides categorically that once the lessee has satisfied or assumed the mortgage loan it may terminate the lease *"without making any further or additional payment to Lessor"* (emphasis added). Thus, even if lease section 12 is somehow superimposed on section 14 as defendant seems to suggest, no obligation is created for lessee's payment of the purchase option price.

Defendant argues in essence that when taxes are recovered by the lessee, section 12 renders section 14's release of the lessee from all further payment inoperative. Section 14 is thereby made in all material respects identical to section 15, the only portion of the lease requiring a purchase option payment. This transposition of section 14 into section 15 is simply irreconcilable with section 14's express discharge of plaintiff from further contractual obligation, and with the explicit direction that section 14's remedies are additional to, and not in place of, other rights and remedies accorded plaintiff lessee.

It is perfectly true that, given the lease's purchase provisions, in a case of default by the lessor, any lessee would most likely do as plaintiff has done and avoid paying the option purchase price by making a section 14, as opposed to a section 15, purchase. However, this does not render section 12 meaningless.

Manifestly, section 12 does not constitute a purchase option, nor is it to be superimposed on either section 14 or 15. A fair reading of section 12 indicates that its principal purpose is to contractually assign responsibility for tax payments; the lessor is deemed responsible for taxes on the pipeline, and the lessee for taxes on its facilities and equipment. Only incidentally is plaintiff lessee given the optional remedy of paying the lessor's taxes and deducting the amount paid from amounts payable to the lessor. As defendant acknowledges, this is an

extremely limited remedy only available when the mortgage loan is no longer outstanding (see lease sections 5 and 7). It cannot be construed fairly to preclude recovery of paid taxes directly by other means, i.e., a breach of contract action, or to radically alter and indeed eliminate other express provisions of the agreement.

Section 12 of the lease agreement really ought to have no relevance to the circumstances at issue. Section 12's remedy was unavailable to plaintiff at the time of defendant's default because the mortgage loan was still outstanding. The only contractually established remedy at plaintiff's disposal was section 14's default purchase option provision. It would be wholly inappropriate to allow defendant to recover "amounts otherwise payable" under section 12 when plaintiff, for whose benefit the section 12 remedy was included, was completely unable to use the remedy. The circumstances which precluded plaintiff's resort to section 12 make its provisions equally unavailable to defendant.

It is unnecessary to speculate as to why a pipeline purchase by plaintiff when defendant is in default should be less costly than it would be otherwise. We note, however, that the difference is not so great, since plaintiff has assumed a mortgage of over $1 million, an obligation it would not have had if it had purchased pursuant to section 15. It is sufficient to observe that the agreement was the product of a bargaining process participated in by defendant with the assistance of its counsel and accountant, and that it was ratified by its shareholders. The agreement is clear and unambiguous, leaving no doubt as to its meaning. There is no reason why defendant should not be held to its terms. This is especially true since it was defendant's willful default upon its tax obligations that enabled plaintiff to invoke the default provisions of section 14. Concur—Murphy, P. J., Ross, Bloom and Rosenberger, JJ.

Kupferman, J., dissents in a memorandum as follows: I would reverse and find for the defendants-appellants on their fifth counterclaim.

This counterclaim involves the interpretation of two clauses of a lease agreement, namely sections 12 and 14. Plaintiff entered into a lease agreement with defendants for the use of one of three water crossings constructed by defendants between Brooklyn and Staten Island for electric power lines. The lease was for a 30-year term at a rental of $125,000 per annum, payable in monthly installments.

Section 12 states: "Lessor shall pay all taxes, assessments

and fees and charges against the demised pipeline and the right of way therefor, and shall keep the same free of liens and encumbrances. If any liens shall be entered against the demised pipeline or right of way therefor, superior in lien to Lessee's interest under this agreement, and Lessor shall fail to take such action as shall cause such lien to be discharged within 30 days after the filing or entry of such lien or notice thereof, *Lessee may pay the amount of such lien or discharge it by deposit or otherwise, and deduct any amount paid or expense so incurred from any amounts otherwise payable by Lessee to Lessor under this agreement"* (emphasis added).

Section 14 states: "Upon default by Lessor in the performance of or upon the Lessor's breach of any covenant, term or condition in this lease on Lessor's part to be performed, Lessee may, at its option and upon 60 days' prior notice in writing specifying the nature of the default, purchase the demised premises by satisfying or assuming the Mortgage Loan, and thereby terminate this lease without making any further or additional payment to Lessor, unless Lessor shall cure such default during such 60-day period. The right granted to Lessee under this Section 14 shall be in addition to, and not in lieu of, any other rights and remedies Lessee may possess upon the happening of such default or breach".

Con Ed brought this action to recover taxes it had paid as lessee. Narrows had the obligation to pay the taxes under the terms of the lease; however, it defaulted on that obligation. Con Ed paid a substantial part of the taxes in default so as to terminate foreclosure proceedings by the City of New York. It is undisputed that the lease granted Con Ed the right to acquire title to the premises upon a default by assuming the outstanding mortgage. However, Con Ed had a superior obligation to pay the difference between the indebtedness assumed by the discharge of defendant's tax liability plus the assumption of the mortgage *and* the purchase price according to a schedule in the lease.

The decision appealed from found sections 12 and 14 to be alternate options available to the lessee which "may" be exercised in the event of a default. The Trial Judge found that it was business judgment that directed Con Ed to follow section 14 and thus that action should be upheld.

There are two well-established rules of contract construction which are critical to this case and support a reversal. First, Con Ed was the party that wrote the lease agreement. Ambiguities in a contract will be resolved against the drafter

of that contract. (4 Williston, Contracts § 621, at 761-762 [3d ed].)

Second, Con Ed followed section 14, which is a general clause of this lease. Section 12 is specific and as such should be controlling. *(See, Higgins & Son v State of New York,* 20 NY2d 425, 428.) When there is a "repugnancy" between a general clause and a specific clause, the specific clause should take precedence over the general clause, "and the [latter] subjected to such qualifications as the [former] might make necessary." (4 Williston, *op. cit.* § 624, at 822.) In addition, Con Ed cannot pick and choose the individual provisions it wishes to follow. The intention of the parties to a contract "must be gleaned from all corners of the document [citation omitted], rather than from sentences or clauses viewed in isolation [citation omitted], and every part of the contract should be interpreted to give effect to its general purpose." *(Tougher Heating & Plumbing Co. v State of New York,* 73 AD2d 732, 733.)

According to the lease, Con Ed should be required to follow the terms of section 12 and thereby deduct the taxes paid from the purchase price owed the defendant. I do not read the lease agreement as having afforded Con Ed the luxury of recovering the taxes it paid by merely assuming the mortgage indebtedness without paying a purchase price as scheduled in the lease agreement. The defendant defaulted on its tax obligation. Con Ed paid the taxes and then assumed the mortgage. However, its failure to follow the dictates of section 12 was a violation of the lease agreement.