OPINION OF THE COURT
 

 Jones, J.
 

 We hold that, inasmuch as the relationship between
 
 *393
 
 Sears, Roebuck as property owner and Enco Associates as architects had its genesis in the contract between them, in an action commenced more than three but less than six years after the completion of the ramp system with respect to which the architects’ services were rendered, the owner may recover contract damages against the architects either on the theory of breach of a particular contract provision or on the theory of failure to exercise due care in the performance of the contract services.
 

 On the present motion to dismiss the complaint we accept the factual allegations set forth in the complaint as amplified by the bill of particulars. It is alleged that on May 15, 1967 Sears, Roebuck, owner, and Enco Associates, Inc., a firm of architects, entered into a contract under which the architects were to design and to supervise the construction of a system of ramps to provide ingress and egress for a parking deck to be constructed over Sears, Roebuck’s White Plains store. The contract contemplated an elaborate system of exposed ramps with snow-melting pipes to assure ease of snow removal. Defendant corporation held itself out to have architects and engineers qualified to design and to supervise the construction of the ramps and to provide appropriate design, mechanical and electrical engineering services. The architect-engineers prepared the plans and specifications and supervised the construction of the ramp system. Work on the project was commenced in 1967 and was completed in the spring of 1968.
 

 In early May, 1970 cracks appeared in the ramps that endangered the structural integrity of the ramp system. It was alleged that the cracks were due to improper design of the snow-melting pipes contained in the ramps in that the architects had failed to include expansion joints and had provided for monolithic pouring of concrete for the ramps.
 

 The complaint sets forth three separately stated causes of action. In the first liability is grounded on allegations of "the carelessness and negligence of defendant in preparing the design and engineering, plans and specifications of the said ramps”. It is alleged that the cost of removal of the existing ramps and the cost of construction of proper ramps will be $1,000,000, and that in the course of removal of the defective ramps the owner will lose the business of customers resulting in loss of anticipated profits of $350,000.
 

 The second cause of action contains a claim for breach of
 
 *394
 
 implied warranty of fitness for the purposes intended and claims damages in the lump sum of $1,350,000.
 

 The third cause of action, with prior allegations incorporated by reference, alleges that the architects contracted to provide design; normal structural, mechanical and electrical engineering services and that they breached the contract by neglect or lack of professional care and in improperly designing the ramps, all to the owner’s damage in the sum of $1,350,000.
 

 The action was commenced in June, 1972. After service of the answer and the bill of particulars, defendant architects moved under CPLR 3211 (subd [a], pars 5, 7) to dismiss the complaint on the grounds that the action was barred by the applicable three-year Statute of Limitations and that the second cause of action for breach of implied warranty failed to state a cause of action. Special Term granted the motion, concluding that, while the first cause of action was for professional malpractice, the second for breach of implied warranty and the third for breach of contract, in essence Sears, Roebuck’s claim was one for professional malpractice and as such was barred by the applicable three-year Statute of Limitations. Additionally Special Term dismissed the second cause of action on the ground that no cause of action lies against an architect for breach of implied warranty. The Appellate Division affirmed and we granted leave to appeal. We conclude that the order of the Appellate Division should be modified to the extent of denying the motion to dismiss as to the first and third causes of action.
 

 The disposition in this case is governed by our recent decision in
 
 Matter of Paver & Wildfoerster (Catholic High School Assn.)
 
 (38 NY2d 669). We had previously held in
 
 Sosnow v Paul
 
 (36 NY2d 780) that owners’ claims against architects arising out
 
 of
 
 alleged defective construction of buildings, however verbally classified, accrue for purposes of all Statutes of Limitations on completion of construction. Thus, here any claims Sears, Roebuck has against Enco Associates accrued in 1968. Although the issues in
 
 Paver
 
 were presented in the context of arbitration, we expressly recognized the command of CPLR 7502 (subd [b]) that the Statute of Limitations to be applied by the courts in arbitration is the same as that in judicial proceedings (38 NY2d 669, 672, 673-674).
 

 As we observed in
 
 Paver;
 
 the choice of applicable
 
 *395
 
 Statute of Limitations is properly related to the remedy rather than to the theory of liability. "[T]he general principle [is] that time limitations depend upon, and are confined to, the form of the remedy” (38 NY2d 669, 672). We took note, however, of the cases in our courts in which the choice of Statute of Limitations had turned on what was termed the "reality” or the "essence” of the particular theory of liability on which the plaintiff relied. We observed that "many of these cases were decided in the context of causes of action to recover damages for direct or underlying personal injury”, and recognized that different policy considerations were involved and often different results reached in actions for damages to property or pecuniary interest only (38 NY2d 669, 675). In particular we held that the rule of
 
 Webber v Herkimer & Mohawk St. R. R. Co.
 
 (109 NY 311)—a personal injury action —and the cases in its wake should not be blanketed to cover all cases; that in
 
 Paver
 
 it should not be extended to a case arising in arbitration (38 NY2d 669, 675-676). But as noted above, CPLR 7502 (subd [b]) commands that, when the courts invoke a Statute of Limitations, its period in arbitration and in judicial proceedings shall be the same.
 

 Without intending to disturb the holdings in the line of cases that deal with claims for personal injuries for malpractice on the part of members of one of the professions and acknowledging the Legislature’s general address to malpractice claims (CPLR 214, subd 6),
 
 [1]
 
 we reaffirm our holding in
 
 Paver
 
 that claims by owners against architects arising out of the performance or nonperformance of obligations under contracts between them are governed by the six-year contract Statute of Limitations (CPLR 213, subd 2), except with respect to the issue of damages as described below.
 

 
 *396
 
 All obligations of the architects here, whether verbalized as in tort for professional malpractice or as in contract for nonperformance of particular provisions of the contract, arose out of the contractual relationship of the parties—i.e., absent the contract between them, no services would have been performed and thus there would have been no claims. It should make no difference then how the asserted liability is classified or described, or whether it is said that, although not expressed, an agreement to exercise due care in the performance of the agreed services is to be implied; it suffices that all liability alleged in this complaint had its genesis in the contractual relationship of the parties. (Cf.
 
 Brick v Cohn-HallMarx Co.,
 
 276 NY 259, 263-264; see Prosser, Torts [4th ed], § 92, p 613.)
 

 As a consequence, the range of proof to be adduced to establish liability will be correspondingly broad. That is to say, not only will evidence be admissible, as in the normal contracts case, which might tend to establish breach of a particular term of the contract between the parties; it will also be open to plaintiff owner to introduce evidence, including expert testimony, which might demonstrate that the architects failed to use due and reasonable care in the performance of their obligations under the contract or that their performance fell short of the applicable professional standards—in effect the same scope of admissibility as in the instance of what has in the past been referred to as a claim for professional malpractice.
 

 Inasmuch as the selection of the applicable Statute of Limitations is related to the remedy sought, we turn to consideration of the relief requested by Sears, Roebuck. In the first cause of action (as amplified in the bill of particulars), plaintiff owner seeks to recover damages of two sorts—first, for cost of correction incident to the removal of the allegedly defective ramps and their replacement by properly constructed ramps (fixed at a figure of $1,000,000), and second, for loss of anticipated profits in consequence of business interruption while the defective ramps are being replaced (fixed at a figure of approximately $350,000). In principle, because this action was not commenced within three years after accrual of the owner’s claims, proof on the issue of damages should be limited to that admissible under the law of damages for contract liability. Had the action been commenced within the three-year period applicable to tort claims, the owner would
 
 *397
 
 have been free to elect to sue in contract or in tort as it saw fit and to offer appropriate proof of damages
 
 (Matter of Paver & Wildfoerster [Catholic High School Assn.],
 
 38 NY2d 669, 675,
 
 supra;
 
 cf.
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395). Inasmuch as it was not, it seems likely, therefore (although the issue cannot finally be resolved until it is known what proof Sears, Roebuck produces) that evidence of loss of profits—a form of consequential damages allowable in tort but usually not in contract—may not be admissible in this instance. It would be inappropriate, however, on a motion addressed to the pleadings for us to attempt to delineate the precise line of demarcation in the law of damages between damages based on contract liability and those based on tort liability. We state the principle, but necessarily its application must now be left to the trial court for resolution in the light of the proof adduced by the parties. (See
 
 Sosnow v Paul,
 
 36 NY2d 780,
 
 supra.)
 

 There is also a choice of law issue in this case which must be addressed. The parties provided in their agreement that it was to "be governed by the law of the [State of Michigan].” Michigan provides a six-year Statute of Limitations for actions against architects arising out of defective improvements to real property (Mich Comp Laws Ann, § 600.5839). Because we conclude that the applicable New York State Statute of Limitations is also six years, it might appear that no practical purpose would be served in this case by determining which six-year statute should be applied. We should, however, dispose of one theoretical argument which might be advanced by Sears, Roebuck. In effect we are here applying both our State’s six-year and its three-year statutes, in combination; the claim is not barred because the six-year statute is applicable, but damages that may be recovered are limited because the three-year statute is also applicable. Under the Michigan law there would be but a single, six-year statute, without restriction as to damages provable. Thus, on the issue of damages different consequences might turn on whether we are to apply the New York or the Michigan Statute of Limitations. We conclude, however, that there would be no merit here to any contention constructed on such an analysis. The contract provision that the agreement was to be governed by Michigan law operated only to import the substantive law of Michigan
 
 (Doríf v Taya,
 
 200 App Div 894, affd 234 NY 525;
 
 Siegelman v Cunard White Star,
 
 221 F2d
 
 *398
 
 189, 194). Even if it were to be thought that the contract provision also imported Michigan’s law with respect to limitations, that law included not only the six-year statute with respect to claims against architects but also a familiar “borrowing statute”.
 
 [2]
 
 The consequence of importing the Michigan borrowing statute would be an instance of renvoi—the reintroduction of the applicable New York State Statutes of Limitation. Thus, we conclude that on any analysis it is our own State’s Statutes of Limitations which are to be applied.
 

 Finally we note our agreement with the determinations below that no action lies for breach of implied warranty, or what is now known as strict product liability, on behalf of an owner against the architect with whom he has his contract. Certainly this is true in New York
 
 (Milau Assoc, v North Ave. Dev. Corp.,
 
 42 NY2d 482), and it appears to be true in Michigan as well (see
 
 Chapel v Clark,
 
 117 Mich 638). In any event, any such claim would be barred by our three-year Statute of Limitations
 
 (Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395,
 
 supra).
 

 In sum, then, the claims of Sears, Roebuck against Enco Associates accrued on completion of the ramps in the spring of 1968. Because the present action was not commenced within three years thereafter, Sears, Roebuck is now barred from recovery of damages under the law of damages with respect to liability in tort and is restricted to recovery of damages, if liability be established, under the law of damages with respect to liability for breach of contract. On the issue of liability, proof will be admissible to establish either breach of a particular term or provision of the contract or failure to use due professional care in the performance of the architects’ obligations under the contract.
 

 Accordingly, for the reasons stated, the order of the Appellate Division should be modified, with costs, to deny the motion to dismiss as to the first and third causes of action in the complaint, and, as so modified, affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
 

 
 *399
 
 Order modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . When CPLR 214 (subd 6) was being drafted, it had been suggested that the limitations on malpractice actions should be extended to include contract claims (e.g., NY Legis Doc, 1961, No. 15; Advisory Committee on Practice and Procedure, Fifth Preliminary Report, § 214, subd 6, par 55; NY Legis Doc, 1962, No. 8; Advisory Committee on Practice and Procedure, Sixth Preliminary Report, p 93). Express wording to this effect was never enacted, however. The recommendation of the Law Revision Commission that the statute be explicitly worded to refer to "an action to recover damages for malpractice,
 
 whether based on tort, contract or any other theory”
 
 (emphasis added) was never adopted by the Legislature (1962 Report of NY Law Rev Comm, pp 232, 233). Nor was any such specificity added when the statute was amended in 1975 to make separate provision for a two-years and six-months Statute of Limitations for medical malpractice (L 1975, ch 109, § 5). (Also, see, Lillich, Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Corn LQ 339, 369, n 218.)
 

 [2]
 

 . "The period of limitations applicable to a claim accruing outside this state shall be either that prescribed by the law of the place where the claim accrued or by the law of this state,
 
 whichever bars the claim."
 
 (Mich Comp Laws Ann, § 600.5861, subd [2]; emphasis supplied.)