**CURRY ROAD LTD., Plaintiff–Appellee,**

v.

**K MART CORPORATION,
Defendant–Appellant.**

**No. 364, Docket 89–7593.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1989.

Decided Jan. 8, 1990.

Robert H. Iseman, Albany, N.Y. (Michael J. McNeil, DeGraff, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., of counsel), for appellant.

Thomas F. Gleason, Albany, N.Y. (Mark T. Walsh, Gleason, Dunn, Walsh & O'Shea, Albany, N.Y., of counsel), for appellee.

Before FEINBERG and MESKILL, Circuit Judges, and COFFRIN,[1] District Judge.

MESKILL, Circuit Judge:

This appeal requires us to determine whether the district court erred in ordering summary judgment after concluding that certain lease provisions concerning subleasing and termination were unambiguous.

---

1. Honorable Albert W. Coffrin, United States District Judge for the District of Vermont, sitting by designation.

Defendant K mart Corporation (K mart) appeals from a judgment entered in the United States District Court for the Northern District of New York, Cholakis, J. The matter was originally filed by plaintiff-appellee Curry Road Ltd. (Curry Road) in the Supreme Court of the State of New York, but was removed to the district court by defendant-appellant K mart on the basis of diversity of citizenship. Curry Road's complaint sought a declaratory judgment that its termination of its lease with K mart was proper under the terms of the lease. The district court granted summary judgment in favor of Curry Road pursuant to Fed.R. Civ.P. 56. The parties agree that New York law governs the case.

## BACKGROUND

Most of the facts giving rise to this matter are undisputed. In 1977, K mart entered into an agreement with Three Center (OLROHO) Associates (Three Center) whereby K mart acquired a leasehold interest in commercial property located in a shopping center in Rotterdam, New York. K mart operated a retail store in the leased space.

The provisions of the lease critical to this litigation are found in paragraphs 21 and 22. Paragraph 21 provides, in pertinent part:

*Use, Assignment and Subletting*

21. The premises hereby demised may be used for any lawful purpose, not inconsistent with the purposes and appearance of a retail shopping center, and subject to the provisions of Article 17 hereof. Tenant shall not be obligated to conduct or to remain open for the conduct of any business in the Demised Premises.... Tenant may assign this Lease or sublet the whole or any part of the Demised Premises, but if it does so, it shall remain liable and responsible under this Lease. In the event Tenant discontinues the operation of its store, it shall use reasonable efforts to seek an assignee of this Lease or a subtenant either of which shall be of reasonable financial standing and (because of the small size of the Shopping Center) shall not be a competing use with uses already in the Shopping Center.

Paragraph 22 provides:

*Landlord's Option to Terminate*

22. Should Tenant at any time elect to discontinue the operation of its store, Tenant shall give to Landlord notice in writing of its intention so to do and in such event Landlord shall have one option, to be exercised by notice in writing given to Tenant within six (6) months after the date of mailing of the Tenant's aforesaid notice to the Landlord, to cancel and terminate this Lease. If the Landlord exercises its said option, this [L]ease shall cancel and terminate on the last day of the month next following the end of said ninety (90) [sic] day period and the Tenant shall be released from any further liability under this [L]ease.

In 1987, Three Center conveyed its interests in the shopping center to Curry Road. On August 19, 1988, K mart entered into an agreement with the Golub Corporation (Golub) subleasing the leased space to Golub. Some time during the following November, K mart closed its store, and preparations were begun for Golub to take possession of the premises. On February 1, 1989, Curry Road notified K mart by letter that Curry Road viewed the sublease as a discontinuance of its operations within the meaning of the lease and that K mart had defaulted on its obligation to notify Curry Road of the discontinuance. Subsequently, Curry Road notified K mart by letter on March 24, 1989 that Curry Road was terminating the lease because of K mart's default.

Apparently anticipating litigation by K mart, Curry Road commenced this action for a declaratory judgment that the termination of the lease was valid. K mart offered the district court evidence in the form of affidavits regarding the original contracting parties' intentions in drafting paragraphs 21 and 22 of the lease. However, finding no ambiguity present in the relevant provisions of the lease, the district court declined to consider the affidavits.

Instead, it construed Paragraphs 21 and 22 as clearly and unambiguously requiring K mart to notify Curry Road when it ceased the operation of its store, whether or not the cessation of business was followed by a sublessee entering the premises. Having found that K mart had terminated the operation of its store and that it had not notified Curry Road as required by the lease, the district court granted summary judgment in favor of Curry Road.

## DISCUSSION

On appeal, K mart claims that the district court improperly granted summary judgment by wrongly concluding that the lease provisions were unambiguous and by disregarding its affidavits concerning the parties' intentions in drafting paragraphs 21 and 22. Summary judgment is available only when the record reveals that there is no genuine issue of material fact remaining to be tried and that the movant is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). When assessing whether genuine factual disputes exist, a court must draw all reasonable inferences against the moving party. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Although summary judgment should never be mistaken for "a disfavored procedural shortcut," *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), neither should it be used to prevent a party from fully litigating a genuine factual dispute. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987).

■ Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract. *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 1100, 488 N.Y.S.2d 645, 646 (1985); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19, 172 N.E.2d 280, 282, 210 N.Y.S.2d 516, 518 (1961). Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent. *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir.

1989); *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56, 396 N.E.2d 1029, 1032, 421 N.Y.S.2d 556, 559 (1979).

■ Whether a contract term is ambiguous is a question of law. *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987); *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 435 N.E.2d 1075, 1077, 450 N.Y.S.2d 460, 462 (1982). A term is ambiguous when it is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Walk–In Medical*, 818 F.2d at 263 (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968) (Mansfield, J.)). Conversely, "[c]ontract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.' " *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282, 413 N.Y.S.2d 352, 355 (1978)).

■ K mart argues that, under these standards, paragraphs 21 and 22 are ambiguous. On the one hand, paragraph 21 purports to grant K mart the right to assign or sublet the leased property. On the other, paragraph 22 gives Curry Road a one-time option to terminate the lease if K mart at any time decides to "discontinue the operation of its store." K mart contends that these two provisions do not answer unambiguously the question whether a subleasing is a discontinuance under paragraph 22. K mart claims that it should have been allowed to submit extrinsic evidence of the contracting parties' intended meaning with regard to that question. By contrast, Curry Road maintains, and the district court concluded, that a subletting clearly and unambiguously con-

stitutes a discontinuance under paragraph 22 sufficient to trigger Curry Road's right to terminate the lease, and that there is no basis for reference to any extrinsic evidence.

K mart supports its interpretation of paragraphs 21 and 22 with the affidavits of Three Center's and K mart's representatives involved in the negotiation of the lease. Relying on these affidavits, it suggests that paragraph 22 is a "dark store" provision, which was intended to pertain only to a permanent abandonment of store operations as opposed to a mere temporary interruption in operations during the transfer of the property to a sublessee. Furthermore, focusing on the language of paragraph 21 relating to subleases, K mart contends that the contracting parties contemplated two types of sublettings: a permissive subletting, which would arise from K mart's exercise of its right under paragraph 21 to sublet or assign the lease; and a mandatory subletting, which would occur if K mart decided to discontinue operations in which case K mart would be required by the lease to make reasonable efforts to obtain a sublessee. According to K mart's interpretation, there is no discontinuance in the case of a permissive subletting, but merely a temporary transition period during which the sublessee takes possession of the premises. A mandatory subletting, however, would be specifically premised on a discontinuance by K mart. If it were to decide to cease its operations, K mart then would be required to seek a subtenant or assignee. Under this construction, only a mandatory subletting implicates paragraph 22, Curry Road's right to terminate, and K mart's duty to notify Curry Road of the discontinuance.

Reading paragraphs 21 and 22 together, we conclude that an ambiguity exists. We do so without expressing an opinion about what the proper construction of the lease should be after the extrinsic evidence is weighed and considered. From the language of the lease alone, it is not clear to us whether the contracting parties intended K mart's exercise of its right to sublease under paragraph 21 to constitute a discontinuance within the meaning of paragraph 22. How the contracting parties intended the two paragraphs to interrelate simply is not evident from the language standing alone. The two paragraphs are susceptible of more than one reasonable interpretation.

Curry Road correctly points out that paragraph 22 refers to the discontinuance of "its"—meaning K mart's—store. If K mart were to sublet the property, it would appear perfectly sensible to conclude that it was no longer continuing the operation of "its" store there. Nevertheless, the right to sublease under paragraph 21 is not expressly limited, except to the extent that K mart would remain liable under the lease. Moreover, paragraph 21 could reasonably be viewed as contemplating some kind of distinction between the exercise of the right to sublet under that paragraph and other manners of ceasing operations that would be classified as a discontinuance under paragraph 22. But we cannot determine, within the four corners of the lease, which construction was intended by the contracting parties.

Because an ambiguity is present in the relevant provisions of the lease, the parties are entitled to present extrinsic evidence of intent. As a genuine issue of material fact exists, the case is unsuited for disposition by summary judgment. *See Walk–In Medical*, 818 F.2d at 264; *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985); *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

## CONCLUSION

Because a genuine issue of material fact relating to the interpretation of the lease remains to be tried, summary judgment was improper. The judgment of the district court is vacated, and the matter is remanded for further proceedings. Costs to the appellant.