**HUNTER'S RUN STABLES, INC., Plaintiff,**

v.

**TRIPLE H CONSTRUCTION CO., INC. and Rigidply Rafters, Inc., Defendants.**

No. 94–CV–6558L.

United States District Court, W.D. New York.

Sept. 12, 1996.

Edward B. Hoffman, Sayles, Evans, Trayton, Palmer & Tifft, Elmira, NY, for Hunter's Run Stables, Inc.

William R. Palmer, Personius, Prechtl, Mattison, Palmer & Brockway, Elmira, NY, for Triple H Construction Co., Inc.

Peter A. Jacobson, Gough, Skipworth, Petralia, Summers, Eves & Trevett, Rochester, NY, Paul E. Richardson, Rochester, NY, for Rigidply Rafters, Inc.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff, Hunter's Run Stables, Inc. ("Hunter's Run"), initially filed the instant complaint in state court against defendants Triple H Construction Co., Inc. ("Triple H") and Rigidply Rafters, Inc. ("Rigidply"). The action was removed to this court on November 10, 1994 on the basis of diversity jurisdiction. Hunter's Run alleges causes of action for breach of an express warranty against both defendants. Currently before the Court are the parties' cross-motions for summary judgment. The motions are denied.

### FACTS

Between November 1982 and March 1983, Triple H contracted with Hunter's Run to erect a horse barn and riding arena on property located in Big Flats, N.Y. During negotiations, Triple H offered its standard contract to Hunter's Run. Hunter's Run, not satisfied with the language of the contract, added a warranty clause. The clause that finally was agreed upon by the parties provided:

> Contractor guarantees to owner that such design with the span so shown will support its weight and will withstand natural forces including but not limited to snow load and wind.

The clause as originally proposed by Hunter's Run provided that the barn design would withstand natural forces "forever." Triple H objected to the word "forever" and it was deleted from the executed contract. However, no temporal language was inserted in its place.

In addition to adding the above language to the construction contract with Triple H, Hunter's Run also obtained a guarantee, using similar language, from Rigidply, the manufacturer of the rafters used for construction of the barn. That clause provided:

> Rigidply ... hereby guarantees to Hunter's Run Stables ... that the design to be used for the construction of a horse barn by Triple H ... will support the weight of such barn and to snow load and wind as per drawings.

The barn was completed sometime in 1983. On March 18, 1994, the roof collapsed under the pressure of snow.

### DISCUSSION

[A] **Standards for Summary Judgment**

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All ambiguities and inferences must be resolved in favor of the non-moving party and all doubts as to the existence of a genuine material issue for trial should be resolved against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

If, when "[v]iewing the evidence produced in the light most favorable to the non-movant ... a rational trier could not find for the

non-movant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir. 1991); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In a dispute between parties concerning an interpretation of a contract, if the language of the agreement is clear and unambiguous, the Court may rule as a matter of law concerning an interpretation of the contractual provision. *Hunt v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *Frederick v. Clark,* 150 A.D.2d 981, 982, 541 N.Y.S.2d 660 (3d Dep't.1989). On the other hand, if there is some ambiguity in the provision or legitimate dispute between the parties concerning their intent, the matter involves a disputed issue of fact which must be left for the jury to determine. *State of New York v. Home Indemnity Company,* 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 486 N.E.2d 827 (1985); *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 512 (2d Cir.1990); *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 264 (2d Cir.1987); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975).

**[B]  Applicability of N.Y.U.C.C.**

■  Although Triple H does not argue that the New York Uniform Commercial Code ("the Code") is controlling in the present case, it does cite to several U.C.C. cases to support its position that the warranty at issue was one of present condition. Furthermore, Rigidply contends that its warranty with Hunter's Run should be analyzed utilizing U.C.C. law because Rigidply merely sold the rafters used in the barn's construction to Triple H. I conclude that the provisions of the Code do not apply to the instant action. "The Code applies to transactions involving goods, but its provisions ... are not applica-

ble to either 'service' or 'construction' contracts." *Schenectady Steel Co., Inc. v. Bruno Trimpoli General Construction Company, Inc.,* 43 A.D.2d 234, 350 N.Y.S.2d 920, 922 (3d Dept.1974). "In deciding whether a contract is one for the sale of goods or for the rendition of services, New York courts look to 'the main objective sought to be accomplished by the contracting parties.' " *Consolidated Edison Company of New York, Inc. v. Westinghouse Electric Corporation,* 567 F.Supp. 358, 361 (S.D.N.Y.1983), *quoting, Ben Construction Corp. v. Ventre,* 23 A.D.2d 44, 257 N.Y.S.2d 988, 989 (4th Dept.1965).

■  In this case, the main objective of the contract was clearly the construction of the horse barn, not the providing of goods. Indeed, as stated above, Triple H does not attempt to argue that the disputed contract was a contract for goods covered by the U.C.C. Rigidply, on the other hand, does contend that the provisions of the Code apply because the rafters it supplied were "goods" sold within the purview of U.C.C. § 2–106. However, if the U.C.C. applies at all, it would apply only between Rigidply and Triple H. Rigidply sold the "goods", i.e. the rafters, to Triple H, not to Hunter's Run. The only contract between Hunter's Run and Rigidply consists of the guarantee executed by Rigidply relating to the ability of the barn to withstand snow load and wind. There simply was no sale of goods between Hunter's Run and Rigidply.

Accordingly, I find that the provisions of the N.Y.U.C.C. do not apply to this action.

**[C]  Statute of Limitations**

■  Under New York law, an action for breach of contract has a six-year limitations period. N.Y.C.P.L.R. § 213(2). Generally, in actions involving construction or building contracts, the statute of limitations commences upon the completion of construction. *Suffolk County Water Authority v. J.D. Posillico, Inc.,* 145 A.D.2d 623, 536 N.Y.S.2d 149 (2d Dept.1988); *Hart v. Moray Homes, Ltd.,* 158 A.D.2d 890, 551 N.Y.S.2d 684 (3d Dept. 1990). *See also Sears, Roebuck & Co. v. Enco Associates, Inc.,* 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977).

In the instant action it is undisputed that the construction of the barn was completed at least ten years before this action was commenced. The barn was completed sometime in 1983. The barn collapsed on March 3, 1994 and this action was commenced shortly thereafter. According to defendants, Hunter's Run's action is therefore barred by the six-year statute of limitations.

Hunter's Run does not dispute that, in New York, contract actions are subject to a six-year statute of limitations. However, it is the contention of Hunter's Run that the warranty clause added to the construction contract created an obligation or promise separate from the other provisions of the contract. Hunter's Run argues that breach of the warranty did not occur until the barn collapsed in 1994. Hunter's Run contends that, since this action was brought within six years of the barn's collapse, it is timely.

Resolution of this issue depends on how the warranty is characterized. If the warranty is considered to be one of "present characteristics" or is considered to be too vague to enforce, then the limitations period would run from the completion of the barn. In such a scenario, Hunter's Run's action would be time-barred. If the warranty is considered as extending to future performance, however, then Hunter's Run's analysis would prevail and, depending on the duration of the warranty, the action would not be time-barred. Thus, the validity and effect of the warranty is crucial to a determination as to whether the instant action is time-barred.

**[D]  Analysis of the Warranty**

Hunter's Run contends that the parties intended the warranty to be prospective in nature, rather than a warranty of a "present condition." In support of its contention, Hunter's Run points to several factors, including: the language of the warranty itself that the barn "will" support and "will" withstand snow load and wind; the negotiations surrounding the term "forever" that plaintiff initially included in the warranty; and the fact that the warranty was a separate and additional provision from the standard requirement that Triple H build the barn in a good and workmanlike fashion.

Defendants, on the other hand, contend that an express warranty that does not *explicitly* warrant future performance is merely a warranty of present condition and performance.

■ I would agree with the defendants that, under the U.C.C., the guarantee is not sufficiently explicit to constitute one for future performance. The U.C.C. section concerning warranties for future performance is more strict than common law contract principles. Under the U.C.C. if the contractual provision is ambiguous, it will not be read as providing for future warranties. Courts do not go behind the agreement to ascertain the intent of the parties, as they might in a common law contract claim. *See Citizens Utilities Company v. American Locomotive Co.*, 11 N.Y.2d 409, 230 N.Y.S.2d 194, 184 N.E.2d 171 (1962) (pre-U.C.C. case: provision that an electric generator "would be and would continue to be capable of continuous operation … for a full normal machine life of at least 30 years" was held to be merely a warranty of present condition); *Holdridge v. Heyer–Schulte Corp. of Santa Barbara*, 440 F.Supp. 1088 (N.D.N.Y.1977) (express warranty that product "was safe and fit for its intended use" held not to extend to future performance); *The Binkley Company v. Teledyne Mid–America Corp.*, 333 F.Supp. 1183 (E.D.Mo., 1971) (provision that machine must "be capable of welding at 1000′ per fifty minute hour, or a gross rate of 1200′ per hour" held not to constitute an explicit warranty of future performance). *But see Mittasch v. Seal Lock Burial Vault, Inc.*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (2d Dept.1973) (express warranty that a casket and burial vault "will give satisfactory service at all times" held to explicitly extend to future performance).

However, as stated above, the U.C.C. is inapplicable to construction contracts. As such, the U.C.C. cases cited above are inapposite. Although Triple H concedes that the U.C.C. does not apply to the instant action, it argues that the U.C.C. cases dealing with warranties are instructive and should be applied to the present situation by analogy. I fail to see the basis for this

contention. Triple H cites, and I have found, no case concerning a construction or service type contract in which a court applied U.C.C. warranty law.

As such, I must be guided by common law principles of contract interpretation in determining the meaning of the warranty given by Triple H and Rigidply to Hunter's Run.

### [E]   Common Law Principles in Contract Interpretation

Whether or not a contract term is ambiguous is a threshold issue for the court. See *Walk–In Medical Centers, Inc.*, 818 F.2d at 263. The Second Circuit has described an ambiguous term as

> one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Curry Road, Ltd. v. K Mart Corporation*, 893 F.2d 509, 511 (2d Cir.1990) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)).

From this language it is apparent that the warranty clause at issue in the present action is ambiguous.

In the present case, Hunter's Run alleges that the warranty was intended to cover the normal life of the structure. Defendants argue that they intended no more than a warranty of present characteristics. In support of its contention, Hunter's Run points to correspondence between its attorney and a representative of Triple H indicating the importance of the warranty to the execution of the contract. Hunter's Run also places great emphasis on the negotiations surrounding the term "forever" that was first included in the warranty. Hunter's Run has submitted an affidavit from its attorney recalling a conversation with a representative from Triple H wherein the representative objected to the term "forever" as too long a time. The attorney, in his affidavit, claims that, during this conversation, it was the parties' intention that the warranty would cover the normal life of the barn.

Defendants, on the other hand, contend that the intent was never to extend their potential liability beyond the six-year statute of limitations. Further, defendants contend that, even if there is some ambiguity in the language of the warranty, the ambiguity should be construed against Hunter's Run as the drafter of the warranty. I disagree. Although Hunter's Run initially drafted the warranty, defendants had some say in the final draft as demonstrated by the deletion of the term "forever." Furthermore, "[r]ules of construction. such as the principle that in certain circumstances a contract may be construed adversely to the party that drafted it ... are principles of last resort, to be invoked when efforts to fathom the parties' intent have proved fruitless." *Record Club of America*, 890 F.2d at 1271.

In the present case, the meaning of the warranty is ambiguous. It is precisely the intent of the parties that is disputed here. Hunter's Run claims that the parties intended the warranty to cover the normal life of a barn. Defendants claim that the parties intended the warranty to be no more than a promise that the barn would withstand snow-load and wind at the time of its completion, i.e. a warranty of present condition and characteristics. As stated above, "where intent is in dispute, summary judgment is improper." *Jafari v. Wally Findlay Galleries*, 741 F.Supp. 64, 67 (S.D.N.Y.1990), citing *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990). "Under traditional principles of contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are questions of fact ..." *Ronan Associates v. Local 94–94A–94B*, 24 F.3d 447 (2d Cir.1994).

■ Thus, it is for the trier of fact to decide what Hunter's Run and the defendants intended when agreeing to the warranty clause in the present case.

■ Furthermore, although the warranty clause is indefinite as to its duration, I cannot say at this point that the warranty is so indefinite so as to be unenforceable. In New York, "[r]ejection of a contract for indefiniteness 'is at best a last resort' [and a] promise that can be made certain by reference to

outside matters is not too indefinite." *Young v. Zwack, Inc.*, 98 A.D.2d 913, 471 N.Y.S.2d 175, *quoting Cohen & Sons v. Lurie Woolen Co.*, 232 N.Y. 112, 114, 133 N.E. 370.

### CONCLUSION

Defendants' motions for summary judgment (Items 10 and 14) are denied. Plaintiff's cross motion to strike defendants' statute of limitations defense [Item 12] is denied.

IT IS SO ORDERED.