■ ROCHESTER FUND MUNICIPALS et al., Respondents, v AMSTERDAM MUNICIPAL LEASING CORPORATION et al., Defendants, and CITY OF AMSTERDAM et al., Appellants. [746 NYS2d 512] —Crew III, J. Appeal from an order of the Supreme Court (Sise, J.), entered July 31, 2002 in Montgomery County, which partially denied the motions by defendants City of Amsterdam and Larsen Engineers P.E., L.S., P.C. to dismiss the complaint against them for failure to state a cause of action.

In 1990 and 1991, defendant City of Amsterdam executed two consent orders with the Department of Environmental Conservation wherein the City agreed to, inter alia, address the excessive level of sewage sludge generated by its sewage treatment plant. To that end, the City entered into a series of transactions with plaintiffs and defendants regarding the construction and financing of a sludge management facility. Insofar as is relevant to this appeal, such facility was to be leased to the City by defendant Amsterdam Municipal Leasing Corporation (hereinafter AMLC) and financed through the issuance of bonds by defendant Montgomery County Industrial Development Agency (hereinafter MCIDA) to a trustee for plaintiffs. Additionally, AMLC entered into an agreement with defendant Larsen Engineers P.E., L.S., P.C., (hereinafter Larsen) pursuant to the terms of which Larsen agreed to provide engineering and design services for the facility and consented to the assignment of such agreement to plaintiffs' trustee, as mortgagee of the facility.

In order to make the necessary payments, the City was required to appropriate funds for the operation of the facility in its annual budget each fiscal year. Difficulties allegedly

ensued regarding the operation of the sludge treatment facility, prompting the City, through its Common Council, to elect not to appropriate funds in its 1998 budget for the lease payments due that year and to terminate the lease. As a result, the City defaulted on its July 1998 payment and all payments subsequent thereto.

Ultimately, plaintiffs commenced this action alleging, insofar as is relevant to this appeal, that the City breached the lease agreement by failing to appropriate the necessary funds for the 1998 fiscal year. Plaintiffs also asserted a breach of warranty and intentional misrepresentation claim against Larsen. Following joinder of issue, the City and Larsen, among others, moved to dismiss the complaint against them pursuant to CPLR 3211. Supreme Court only partially granted the respective motions, prompting this appeal by the City and Larsen.

Initially, the City argues that Supreme Court erred in failing to dismiss plaintiffs' first, second and third causes of action alleging that the City breached the lease agreement by failing to appropriate the necessary funds for fiscal 1998. Specifically, the City contends that the lease agreement's executory clause was triggered, thereby absolving the City of any liability. For the reasons that follow, we find this argument to be unpersuasive.

General Municipal Law § 109-b (2) (f) requires that all contracts with a municipality contain an executory clause providing, in relevant part, as follows: "This contract shall be deemed executory only to the extent of monies appropriated and available for the purpose of the contract, and no liability on account thereof shall be incurred by the political subdivision beyond the amount of such monies." Such clauses are enforceable only where it has been established that funds were not available "in the course of ordinary budgetary procedure[s]" (*Starling Realty Corp. v State of New York*, 286 NY 272, 278; *see, Green Is. Contr. Corp. v State of New York*, 99 AD2d 330, 332, *lv denied* 66 NY2d 605). Stated another way, "any unavailability of funds must not have been the result of any improper act or omission by the [municipality]" (*Green Is. Contr. Corp. v State of New York, supra* at 332; *see, Forelli v State of New York*, 179 AD2d 394, 396), nor may the municipality make such funds "unavailable" as a matter of convenience (*see, Adson Indus. v State of New York*, 28 AD2d 1183, 1183-1184).

Although the lease agreement executed by the City indeed contains an executory clause similar to the one set forth in General Municipal Law § 109-b (2) (f), the City also agreed in that document to: "include in its budget request for each

Fiscal Year the Lease Payments to become due in such Fiscal Year, and will use all reasonable and lawful means at its disposal to ensure the appropriation of money for such Fiscal Year sufficient to pay the Lease Payments coming due therein." To the extent that the City argues that it was justified in failing to appropriate the required funds because the facility was not operating properly, we need note only that the City nonetheless has failed to demonstrate that such funds were unavailable through the ordinary budget process (*see, Starling Realty Corp. v State of New York, supra* at 278). Indeed, plaintiffs have alleged that such funds were not only available but were in fact used to finance "substantially the same substantive purpose," i.e., an alternate sludge treatment facility, during the 1998-1999 fiscal year (*see, TM Park Ave. Assoc. v Pataki*, 986 F Supp 96, 110, *vacated in part* 214 F3d 344). Although the City apparently denies this allegation, plaintiffs nonetheless have tendered sufficient proof to avoid dismissal of their breach of contract claims against the City.

Next, Larsen contends that Supreme Court erred in failing to dismiss plaintiffs' breach of warranty and intentional misrepresentations claims. With regard to plaintiffs' tenth cause of action alleging breach of an express warranty, it is clear from the record that Larsen was retained to provide professional services with respect to the design of the sludge treatment facility. "No warranty attaches to the performance of a service * * *" (*Aegis Prods. v Arriflex Corp. of Am.*, 25 AD2d 639, 639 [citation omitted]; *see, Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 398; *Milau Assoc. v North Ave. Dev. Corp.*, 42 NY2d 482, 486). "If the service is performed negligently, the cause of action accruing is for that negligence. Likewise, if it constitutes a breach of contract, the action is for that breach" (*Aegis Prods. v Arriflex Corp. of Am., supra* at 639).

In our view, the allegations set forth in plaintiffs' tenth cause of action cannot be construed as asserting either a negligence or a breach of contract claim. The complaint alleges the breach of an "express warranty" by Larsen, and the record reveals that no express warranty regarding the design and operation of the plant was so provided. Whatever representations Larsen may have made in the underlying contract with AMLC, which subsequently was assigned to plaintiffs, do not rise to the level of guaranteeing a particular result. Accordingly, Supreme Court erred in failing to dismiss plaintiffs' tenth cause of action against Larsen alleging breach of warranty.

We reach a similar conclusion with regard to plaintiffs'

eleventh cause of action sounding in fraud/intentional misrepresentation. Although Larsen incorrectly argues that it was not in privity with plaintiffs,* this cause of action nonetheless is subject to dismissal. Where, as here, a fraud claim is asserted in connection with a claim for professional malpractice, the plaintiff must, in addition to pleading the traditional elements of intentional fraud, i.e., "misrepresentation of a material existing fact, falsity, scienter, deception and injury" (*Callahan v Callahan*, 127 AD2d 298, 300), allege that "it failed to pursue an available remedy which would have corrected or alleviated the condition caused by the malpractice had it not been diverted from doing so by its reliance upon [the] defendant's alleged misrepresentation" (*St. Alexander's Church v McKenna*, 294 AD2d 695, 697). Stated another way, a fraud claim in this regard "is sustainable only to the extent that it is premised upon one or more affirmative, intentional misrepresentations—that is, something more egregious than mere 'concealment or failure to disclose [one's] own malpractice' * * *—which have caused additional damages, separate and distinct from those generated by the alleged malpractice" (*White of Lake George v Bell*, 251 AD2d 777, 778, *appeal dismissed* 92 NY2d 947, quoting *LaBrake v Enzien*, 167 AD2d 709, 711 [citations omitted]).

Here, a review of plaintiffs' eleventh cause of action for intentional misrepresentation and its previously dismissed twelfth cause of action for malpractice reveals essentially the same factual allegations, namely, that Larsen designed a sludge management facility that it knew would not be adequate for its intended purpose and, in so doing, misrepresented the adequacy of the underlying design. Additionally, the damages allegedly sustained by plaintiffs are identical under the respective causes of action, i.e., the monetary loss suffered by virtue of the City's default on the underlying bonds. In light of these pleading deficiencies, we are of the view that plaintiffs' eleventh cause of action against Larsen for intentional misrepresentation should have been dismissed. The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

---

* As noted previously, Larsen consented to the assignment of its contract with AMLC to "the holder of any mortgage given to finance construction of the Project," i.e., plaintiffs' trustee. Additionally, the mortgage given by MCIDA and AMLC to plaintiffs' trustee expressly assigned to such trustee "[a]ll of [AMLC's] right, title and interest in any contracts and agreements between [AMLC] and * * * other parties * * * in connection with the acquisition, development, design, renovation or installation of the Project Facility." Thus, Larsen indeed was in privity with plaintiffs.

Mercure, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendant Larsen Engineers, P.E., L.S., P.C. to dismiss the tenth and eleventh causes of action against it; motion granted to that extent and said causes of action dismissed against said defendant; and, as so modified, affirmed.