**James T. MOFFAT, Plaintiff,**

v.

**HARCOURT BRACE & COMPANY, Defendant.**

**No. 93–0599–CIV–ORL–18.**

United States District Court, M.D. Florida, Orlando Division.

July 25, 1994.

Arthur Richard Louv, William Leon Eagan, Arnold, Matheny & Eagan, P.A., Orlando, FL, for James T. Moffat.

Jerry Ray Linscott, Baker & Hostetler, Carlos Juan Burruezo, Jackson, Lewis, Schnitzler & Krupman, Orlando, FL, for Harcourt General, Inc.

Jerry Ray Linscott, Lea A. Banks, Baker & Hostetler, Orlando, FL, for Harcourt Brace & Co.

## ORDER

G. KENDELL SHARP, District Judge.

James T. Moffat (Moffat) brings this action against Harcourt Brace & Company (Harcourt) alleging breach of contract in which Harcourt granted registration rights and piggyback rights for unregistered shares to Moffat and others. Both Moffat and Harcourt filed motions for summary judgment. Each responded in opposition to the other's motion. Based on a review of the case file and relevant law, the court grants summary judgment in favor of Harcourt, and thus, the court denies Moffat's summary judgment motion.

### I. Facts

On December 15, 1988, Harcourt Brace Jovanovich, Inc. (HBJ) and HBJ Life & Health Coverage, Inc. (HBJ Life) entered

into an agreement and plan of reorganization (Agreement) with Security Funding Corporation (SFC), Richard K. Larson (Larson), Arthur J. Cade (Cade), and Moffat. Larson, Cade and Moffat were the sole shareholders of SFC. Under the Agreement, HBJ and HBJ Life acquired SFC by an exchange of approximately 1,600,000 shares of unregistered HBJ common stock. Sections 4.4 and 4.5 of the Agreement provide procedures for selling shareholders to request registration of unregistered stock.

In a letter dated May 15, 1989, Larson requested registration of 212,742 shares of his unregistered HBJ common stock pursuant to Section 4.4 of the Agreement. Section 4.4 of the Agreement, entitled "Requested Registration," provides in pertinent part,

> (a) [i]f ... HBJ receives a written request signed by one or more Selling Shareholders stating that one or more Selling Shareholders proposes to sell or distribute publicly at least 20% of the aggregate shares of Subject Securities issued and delivered to all of the Selling Shareholders pursuant to this Agreement, **HBJ will use its best efforts to file as promptly as practicable, but in any event within 60 days after receipt of such written request, and to cause to become effective, a registration statement on Form S-3 ... under the 1933 Act covering the Subject Securities specified in the written request....** (emphasis added)

Larson amended his letter on May 18, 1989 by requesting registration of 412,742 shares. Larson later learned that he should have sent the letters by registered mail, and thus, Larson resubmitted by registered mail his two previous requests for registration in a letter dated May 25, 1989. Meanwhile, on May 19, 1989, the HBJ Board of Directors (HBJ Board) adopted a resolution authorizing the preparation and filing of a registration statement covering Larson's shares. (Doc. 32, Ex. 8, Harcourt's Answer to Interrogatory No. 11.)

On June 7, 1989, HBJ provided written notice to Moffat, pursuant to Section 4.5 of the Agreement, that HBJ intended to register shares of HBJ common stock and that it expected to file a registration statement with the Securities and Exchange Commission (SEC) in July 1989. The letter informed Moffat that under the Agreement Moffat had certain rights to register his shares of HBJ common stock in the event that HBJ registered any of its equity securities on such a registration statement, and that to exercise his rights Moffat must make a written request to HBJ that HBJ include some or all of Moffat's HBJ common stock shares in the registration statement. In a letter dated June 20, 1989, Moffat requested that 60,000 of his unregistered HBJ common stock be registered in the proposed July 1989 registration statement.

At an HBJ Board meeting on June 19, 1989, the HBJ Board authorized the corporation to announce HBJ's intention to sell its six theme parks and related properties. (Doc. 32., Ex. 10.) On June 20, 1989, HBJ issued a press release announcing its intention to sell its theme parks and land holdings. (Doc. 32, Ex. 11.) Subsequently, HBJ notified Moffat by letter dated June 29, 1989 that HBJ had decided to postpone the registration and offering because it was contemplating the sale of six theme parks and related properties. Further, the letter noted that Section 4.4(b) of the Agreement entitled HBJ to postpone, in certain circumstances, a requested registration and offering. Section 4.4(b) provides, in pertinent part,

> **HBJ shall be entitled to postpone,** for a period of time not to exceed 180 days from the date it receives the written request pursuant to Section 4.4(a), **the filing of any registration statement otherwise required to be prepared and filed by it, if, at the time it receives the request, HBJ determines, in its sole discretion, that the registration and offering could interfere with any financing, acquisition, corporate reorganization, or other material transaction involving HBJ or any of its affiliates** and gives any Selling Shareholder requesting registration written notice of its determination. (emphasis added)

On September 28, 1989, HBJ entered into a contract to sell the theme parks. On that same day, HBJ issued a press release announcing the sale and the basic terms of the sale. (Doc. 54.)

In a letter dated November 1, 1989, HBJ informed Moffat that it had been requested to proceed with the demand registration of a certain shareholder, and that pursuant to its June 29 letter and Section 4.5 of the Agreement, this letter provided Moffat written notice that HBJ intended to register the HBJ common shares and expected to file a registration statement with the SEC in late November 1989. The letter also provided that Moffat had fifteen days within which to request that HBJ register his shares with the demand registration. The letter further stated that should the demand be withdrawn or HBJ decide not to proceed with the filing, Moffat's right to include his shares of the HBJ common stock in the registration statement would terminate. On November 13, 1989, Moffat requested that his unregistered HBJ stock be included in the registration. HBJ delivered the registration statement to the SEC on November 22, 1989 and the registration statement was declared effective December 8, 1989.

## II. Legal Discussion

### A. Standard for Summary Judgment

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. at 2553–54. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether the moving party has satisfied its burden, all inferences drawn from the underlying facts are considered in a light most favorable to the party opposing the motion, and all reasonable doubts are resolved against the moving party. *Id.* at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. Choice of Law

A federal court in a diversity case must apply the conflict of laws doctrine of the state in which it sits. *Forzley v. AVCO Corp. Elecs. Div.*, 826 F.2d 974, 978 (11th Cir.1987). Under Florida law, when the parties to a contract have indicated their intent as to the law which will govern the contract, the contract will be governed in accordance with such intent. *Id.* at 978–79 (noting that the law chosen in the contract will be applied if there is a reasonable relationship between the contract and the state whose law is selected, and the selected law does not conflict with Florida law or confer an advantage on a non-resident party which a Florida resident does not have). The court notes that pursuant to Section 9.13 of the Agreement, the parties agreed that "[t]he validity, performance, and enforcement of this Agreement shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of laws hereof." Further, the parties stipulated in their pretrial statement that New York law applies to the contract. (Doc. 54.) Because neither party disputes the application of New York law, the court will apply the parties' choice of law.

### C. Piggyback Registration under Section 4.5

Moffat contends that HBJ's election to postpone the filing of the registration by its

June 29 letter and its failure to file a registration statement or take any action until November 22 constituted a breach of its best efforts obligation to Moffat under Section 4.5. Harcourt argues that Moffat fails to establish a breach of the Agreement. Harcourt asserts that Section 4.4(b) allows HBJ to postpone the registration under certain circumstances. Harcourt also contends that Moffat is entitled to piggyback rights under Section 4.5 only if the shares requested for registration pursuant to Section 4.4 are registered. Thus, Harcourt asserts that until the primary registration is effected, the piggyback or secondary registration rights do not become effective. Harcourt characterizes the filing of the registration statement covering Larson's shares as a condition precedent to Moffat's piggyback registration rights.

Harcourt's summary judgment motion is premised on arguments that are similar to the arguments that Harcourt makes in opposition to Moffat's motion for summary judgment. In response to Harcourt's motion, Moffat argues that a dispute exists as to whether the plain and ordinary meaning of Sections 4.4, 4.5 and 4.7 were breached by HBJ's failure to file a registration statement covering both Larson's and Moffat's shares of HBJ common stock until November 1989. In particular, Moffat disputes Harcourt's interpretation that piggyback rights are secondary rights and are subject to the filing of a registration statement.

■ Both parties argue that the relevant provisions of the Agreement are clear and unambiguous. Furthermore, although the parties vary in their interpretation of the Agreement, under New York law, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations...." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2nd Cir.1989) (construing a contract under New York law); *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2nd Cir.1990) (applying New York law and stating that language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement and who is aware of the customs, practices, usages, and terminology as understood in the particular business).

■ Section 4.5 of the Agreement entitled "Piggyback" Rights provides, in pertinent part,

> [i]f ... HBJ proposes to register any shares of HBJ Common Stock under the 1933 Act on a registration statement ... the Selling Shareholders shall be entitled, on each such occasion, to have any or all of the Subject Securities owned by them **registered and included in such registration statement** subject to the provisions hereof.... Upon the written request of a Selling Shareholder ... that HBJ include the Subject Securities in the registration statement ... **HBJ will use its best efforts to cause the Subject Securities which the Selling Shareholder has requested to be registered under the 1933 Act in connection with such registration to be registered and to be included in the offering covered by the registration statement....** (emphasis added)

Because Moffat requested that HBJ include his shares in the registration statement, the piggyback provision required HBJ to use its best efforts to cause Moffat's shares to be registered and included in the registration statement covering Larson's shares, with certain exceptions which are not relevant in this case. However, HBJ postponed the registration statement under Section 4.4 of the Agreement. Moffat appears to argue that the postponement under Section 4.4 was not valid, and thus, HBJ failed to use its best efforts under Section 4.5 to register and include Moffat's shares in the registration statement. Yet, Section 4.5 is silent as to the consequences of postponing registration of the initial shares to which the piggyback shareholder seeks to include his shares on the registration statement. Instead, the best efforts clause under Section 4.5 refers only to including shares in the registration statement. The evidence shows that Moffat's shares were included in the registration statement filed in November 1989, whereas in July 1989 no registration statement existed in which to include Moffat's shares. Therefore, because the undisputed evidence shows HBJ included Moffat's shares in the registration statement covering Larson's shares, Moffat fails to show that HBJ violated its best efforts obligation under Section

4.5. To the extent that Moffat argues the invalidity of the postponement of the registration, the court must turn to Section 4.4.

### D. Requested Registration under Section 4.4

#### 1. Moffat's Standing.

█ Moffat further contends that HBJ's election to postpone the filing of the registration by its June 29 letter and its failure to file a registration statement or take any action until November 22 constituted a breach of its best efforts obligation to Larson under Section 4.4. Harcourt asserts that Larson requested registration of his shares under Section 4.4 and Moffat elected his piggyback rights under Section 4.5. Thus, Harcourt argues that Section 4.4 governs the registration of Larson's shares, not Moffat's shares. Harcourt asserts that because Section 4.4 governed the registration of Larson's shares only, Moffat does not have standing to seek recovery for an alleged breach of Section 4.4.

The parties do not dispute that Moffat sought registration of his shares under Section 4.5, whereas Larson sought registration under Section 4.4. As noted earlier, Section 4.5 required that HBJ use its best efforts to include Moffat's shares in the registration statement covering Larson's shares. Section 4.4, the applicable provision with regard to Larson's shares, does not provide a means for Moffat to challenge whether HBJ used its best efforts to file the registration statement covering Larson's shares. Accordingly, the court finds that Moffat is not entitled to raise a claim for failure to use best efforts under Section 4.4.

#### 2. Postponement.

█ Even assuming Moffat has standing to assert a breach of Section 4.4, Harcourt argues that Moffat fails to show that HBJ violated the Section 4.4 best efforts clause. Moffat notes that Section 4.4 allowed HBJ to postpone the filing of the registration statement for a period of time not to exceed 180 days from the date that HBJ received Larson's written request, if, at the time it received the request, HBJ determined that the registration and offering could interfere with any material transaction involving HBJ or any of its affiliates. HBJ's June 29 letter to Moffat states that HBJ was postponing the registration and offering because it was contemplating the sale of six theme parks and related properties. Thus, Moffat argues that because HBJ's decision to sell the theme parks and related properties occurred approximately one month after Larson's written request, HBJ could not rely on the decision to sell as a basis to postpone the registration and offering under Section 4.4. In addition, Moffat argues that contemplating the sale of the theme parks does not constitute a material transaction which would entitle HBJ to postpone the registration pursuant to Section 4.4.

Nevertheless, the court finds that HBJ's decision to postpone the registration was made within a reasonable time after receiving Larson's registration request and deciding to go forward with preparing and filing the registration statement. Although Moffat seeks the court to interpret the phrase "at the time it receives the request" under Section 4.4(b) in a restrictive manner, the court finds that Section 4.4(b) did not preclude HBJ from deciding within a reasonable time after receiving the request and deciding to go forward with the registration that the registration could interfere with a material transaction, the sale of the theme parks and related properties. The court finds that sale of the theme parks and related properties was a significant act and that the registration could have interfered with any financing, acquisition, corporate reorganization, or other material transaction involving HBJ or any of its affiliates. Further, the subsequent sale of the theme parks and related properties is evidence that the postponement of the registration was in good faith. Accordingly, the court finds that HBJ's postponement of the registration was valid, and thus, Moffat fails to show that HBJ violated its best efforts obligation under Section 4.4.

### E. Section 4.7 of the Agreement

In response to HBJ's summary judgment motion, Moffat argues that a dispute exists as to HBJ's obligations under Section 4.7, and thus, summary judgment is inappropriate. Section 4.7 governs the parties' obligations in registration. In particular, Section 4.7(a) provides that when HBJ is obligat-

ed by the provisions of Section 4 to effect registration of any securities held by a selling shareholder, HBJ will prepare and file a registration statement with the SEC as expeditiously as possible and use its best efforts to cause the registration statement to become and remain effective. The court notes that Moffat fails to assert that HBJ breached Section 4.7 in his complaint or his motion for summary judgment. Moreover, to the extent that Moffat's reference to Section 4.7 is an attempt to argue that HBJ violated the Section 4.7 best efforts clause, Moffat fails to present sufficient evidence of a breach of this section. Further, the court finds that any best efforts obligation under Section 4.7 does not alter the court's decision as to Sections 4.4 and 4.5 of the Agreement.

### III. Conclusion

The court finds that the undisputed facts as well as the inferences drawn from the facts do not justify bringing this action to trial. Moffat fails to show that HBJ violated its best efforts obligation under Section 4.5 to include Moffat's shares in the registration statement covering Larson's shares. Further, Moffat is not entitled to raise a claim for breach of best efforts obligation under Section 4.4. Even assuming Moffat could raise a claim under Section 4.4, the court finds that HBJ's postponement of the registration was valid, and thus, Moffat fails to show that HBJ violated its best efforts obligation under Section 4.4. Finally, the court finds that Moffat fails to sustain a claim under Section 4.7. Accordingly, the court **GRANTS** summary judgment in favor of Harcourt, (Doc. 40.), and **DENIES** Moffat's summary judgment motion. (Doc. 31.) The court instructs the clerk of the court to enter judgment in favor of Harcourt.

It is **SO ORDERED.**